BURPO ET AL., APPELLEES, *v.* THE RESOLUTE FIRE INS.
CO., APPELLANT, ET AL.

(No. 22216—Decided November 19, 1951.)

*Mr. H. C. Wedren,* for appellees Norman Burpo and
Harrison Burpo.

*Messrs. Ulmer, Berne, Gordon & Glickman,* for appellant.

*Mr. W. J. Papenbrock,* for appellee National City Bank of Cleveland.

Thompson, J. This is an appeal on questions of law by defendant-appellant, The Resolute Fire Insurance Company, from a judgment of the Municipal Court of Cleveland, in favor of plaintiffs-appellees. The action was brought by two brothers, Harrison Burpo and Norman Burpo, against the insurance company to obtain recovery on an automobile collision insurance policy issued to Norman Burpo, after an automobile specified in the insurance policy had been demolished.

The amended petition, after reciting that plaintiffs were co-owners of a Ford automobile which was involved in a collision on July 17, 1949, stated that the company had insured one of the co-owners, Norman Burpo; that legal title was in Harrison Burpo; that, although the interests of both plaintiffs were disclosed to the insurance company, the latter had issued its policy in favor of Norman Burpo only; that the automobile was demolished in the collision; and that the company, upon being notified of the accident, refused to pay the plaintiffs the amount of damage sustained.

The defendant company, in its answer, admitted that it had refused to pay plaintiffs the amount demanded and by way of defense asserted that, subsequent to the accident, the company learned that plaintiff Norman Burpo, to whom it had issued its insurance policy, was not the owner of the car and that plaintiff Harrison Burpo was the sole owner of such automobile and that he was not insured under the policy in question. The company further expressed its readiness to refund the premium of $76 which it had

received at the time of execution of the insurance policy but denied any other liability to plaintiffs.

Upon trial in the Municipal Court of Cleveland, the insurance policy was introduced in evidence. Item 1 declared that the insured was Norman Burpo, residing at 10704 Pasadena avenue, Cleveland, Ohio. The occupations of the insured and his employer were stated; loss was to be payable to the National City Bank of Cleveland and a 1947 Ford sedan of stated motor number was covered, the insurance being for a one-year period from May 11, 1949, to May 11, 1950. For the period aforesaid, the company in its policy provided that in consideration of the payment of the specified premium and "in reliance upon the statements in the declaration and subject to the limitations of liability" it agreed to pay for direct and accidental loss or damage to the automobile, the actual damages occasioned by collision (less $50 deductible) during the term of the policy.

Among various provisions of the policy, item 5 of the declaration and paragraphs 11, 14 and 16 of the conditions are important.

Item 5 of the "declarations" of the policy provides:

"Except with respect to bailment, conditional sale, mortgage, or other encumbrance, the insured is the sole owner of the automobile, except as stated herein. *No exceptions.*"

Conditions stated in the policy and important to our inquiry are as follows:

"11. Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy, or estop the company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

"14. Fraud and Misrepresentation: This policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.''

"16. Declaration: By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.''

By leave of court, The National City Bank of Cleveland became a defendant in the case and filed an answer and cross-petition setting up its mortgage interest in the automobile and requesting that its interest be protected.

The testimony in the trial court revealed that, although the policy was issued in the name of Norman Burpo, the certificate of title to the automobile at the time of the accident, and at the time of the issuance of the policy, was in the name of Harrison Burpo only. The evidence further revealed that the insurance obtained in May 1949 from the defendant insurance company replaced previous insurance issued by The Progressive Mutual Insurance Company on the same automobile, at the time of its purchase in September 1948, carried in the name of Harrison Burpo and cancelled by the latter company in early May 1949 after three accidents involving the automobile had occurred.

On the witness stand, Harrison Burpo admitted that the notice of cancellation of the prior insurance was received by him on May 5, 1949, or thereabouts, and

that he was then unemployed. The evidence further showed, in connection with the mortgage held by the bank, that the mortgage note had been signed by three brothers, Harrison, Norman and John Burpo; that the note had been executed in September 1948, and had been reduced to $619.94 at the time of trial in the Municipal Court. A bank employee testified that in May 1949 Harrison Burpo and Norman Burpo informed him of the cancellation of the insurance by The Progressive Mutual Insurance Company and that his bank then referred the Burpos to a Mr. Grove to obtain insurance in another company. Both Harrison and Norman Burpo thereupon called upon the latter and introduced themselves with the statement that they wished insurance on their car. Grove asked who was paying for the insurance and Norman stated that he was. Grove was told he could get any further information he desired from the bank. The Burpos testified to no other conversation with Grove, but the latter when called as a witness by the insurance company told of receiving additional information from the Burpos as to cost of the car, the date of its purchase (May 1949) and the name of the mortgagee. Grove said he filled in all this information on an application form, and he later mailed to Norman Burpo a memorandum certificate of the insurance policy which was introduced in evidence. This certificate showed Norman as the owner of the car, and the date of its purchase as May 1949. Norman Burpo never called the defendant insurance company to complain of any inaccuracies after receipt of his copy.

The insurance policy was mailed direct to the bank. It was not until investigation of the damage to the automobile in July 1949 that the insurance company learned that the title to the vehicle was registered in the name of Harrison Burpo and not in Norman's

name, and that Harrison Burpo had been unemployed at the time the insurance was contracted for.

On September 2, 1949, Norman Burpo was informed by letter that no payment would be made by the insurance company "for the reason that the vehicle involved was owned by Harrison Burpo. When arrangements were made by you to purchase the insurance, you did not disclose the name of the owner but represented to the agent that you were the owner of the car. At the time these arrangements were made, the real owner of the car, Harrison Burpo was unemployed and insurance would not have been extended to him. As you have violated the provisions of the policy, and the declarations made by you were not correct, no payment will be made to you."

Shortly after receipt of the foregoing letter, the two Burpo brothers filed suit against the insurance company. Upon trial to the court, the trial judge rendered judgment for the plaintiffs.

Various errors on the part of the trial court are urged by the insurance company in this court, but these can be reduced to the objection that the trial court erroneously rendered judgment for plaintiffs.

The question here involved is the right of recovery on an insurance policy where one of the declarations contained therein, namely, that the insured is the sole owner of the car, is in fact untrue, and where the policy provides further that it shall be void if the insured has concealed or misrepresented any material fact; that by acceptance of the policy the insured agrees that the declarations are his agreements and representations; and that the policy is issued in reliance thereon.

In order to reach its conclusion, this court has sought as much light as possible from the decided cases and has been impressed with the thoroughness

and helpfulness of counsel who appear to have cited in their briefs all the cases we have found of any value in our inquiry.

The two cases most nearly analogous to the instant case seem to be *Republic Mutual Ins. Co.* v. *Wilson* (1940), 66 Ohio App., 522, 35 N. E. (2d), 467, a decision by the Court of Appeals of the Fourth Appellate District, and *Faris* v. *Travelers Indemnity Co.* (1932), 278 Mass., 204, 179 N. E., 605, a decision by the Supreme Judicial Court of Massachusetts.

In *Republic Mutual Ins. Co.* v. *Wilson,* the first case cited, an insurance company paid a loss under an automobile insurance policy and subsequently learned that the insured had made certain misrepresentations in his application for insurance. Taking the position that under the terms of the policy the false statements prevented the policy from becoming effective, the insurance company filed suit against the insured to recover back the payment made in behalf of the insured. The case was tried to the court without intervention of a jury and resulted in a judgment for defendant. The insurance company appealed to the Court of Appeals on questions of law. The Court of Appeals reversed the judgment of Common Pleas Court and entered final judgment for the insurance company. The nature of the action differed in form from the present action, but the important point to note is the conclusion by the Court of Appeals that the incorrect statements made by the insured at the time he acquired the policy were material and prevented the policy from ever becoming effective. Item 7 in the application for insurance involved in that case, which was incorporated into the terms of the policy, provided as follows:

"By acceptance of this policy the named insured agrees that the statements in the declaration are his

agreements and representations which he warrants to be true, that this policy is issued in reliance upon the truth of such representations.''

It will be observed that the language quoted is very similar to condition 16 of the policy here in issue. Two points discussed in the opinion have importance in the case presently before us for decision.

Note that the misrepresentations were made in the application for the policy, but the questions asked of the insured were written down by the insurance agent. The argument was therefore advanced by the insured that the insurance agent, in filling in the answers, made the incorrect representations and that the insured was not thereby bound. The court declared, however, that when the insured signed the application he adopted and ratified all the statements appearing above his signature and that he was bound by the statements contained therein. In its opinion, at page 524, the court declared:

''The material and essential facts of the case are not in serious dispute. The defendant, Wilson, attempts to avoid the effect of his answers to the interrogatories stated in his application for insurance by asserting that he did not verbally answer the questions propounded by the insurance agent at the time the application was made. When Wilson signed the application he adopted and ratified all the statements appearing above his signature and he is bound by all the statements contained therein.

''The policy provides that the statements as to material facts are warranted by Wilson to be true. We are of the opinion that aside from the express provisions of the policy as to warranties, the statements of Wilson in his application, as to other insurance, the cancellation of the same, and his past accidents, constitute warranties as to material facts which go to the

validity of the contract of insurance. As the policy so provides in express terms there is no question but that these statements constitute warranties. If the statements as to material facts are false they void the contract of insurance regardless of the knowledge of their falsity or the intention of the defendant. In such case the policy is void *ab initio*. *Ins. Co.* v. *Pyle*, 44 Ohio St., 19, 4 N. E., 465, 58 Am. Rep., 781.''

A further matter of interest in that case was the argument that in order to avoid the policy the burden was on the insurance company to establish the fact that the misrepresentations were made deliberately and that Section 9391, General Code, was applicable. The Court of Appeals pointed out, however, that the section referred to is found in a chapter of the General Code dealing with legal reserve life insurance companies and that it is inapplicable to other policies of insurance. Upon this point the court, on page 525, declared:

''Counsel for defendant has referred to Section 9391, General Code, as to false answers to interrogatories in application for insurance. This section of the Code has no application in the present case for the reason that it is in the General Code under the chapter with reference to life insurance and furthermore the present suit is not upon the policy but is a suit by the insurance company to recover back money paid. This section of the Code is applicable when a suit is brought upon a life insurance policy.''

We find that the case of *Republic Mutual Ins. Co.* v. *Wilson, supra*, is persuasive in the two respects mentioned. In view of the language of the insurance policy in the instant case (paragraph 16 of the conditions above quoted), in which, by acceptance of the policy, the insured agrees ''that the statements in the declaration are his agreements and representations,'' and

that the policy is issued in reliance upon the truth of such representations, it seems to us immaterial that the representative of the insurance company, and not the insured, may have filled in the necessary information. Due to this provision of the policy before us for construction, the discrepancies in the stories of the Burpo brothers and of the insurance company's representative as to how much information was actually supplied by the insured, how much by the bank, and how much by the insurance representative become unimportant. The vital point is that Norman Burpo was named as insured in the policy and that he paid the premium and promptly received a copy of the memorandum certificate of insurance. The memorandum certificate, introduced in evidence, contained all the information found on page one of the policy and set forth all the declarations of the policy including item 5 above. Furthermore, the insurance policy was mailed to Burpo's bank and it was at all times available to him to examine. It is significant that he never made complaint as to any inaccuracies contained either in the memorandum certificate or in the insurance policy.

The second case we find helpful is *Faris* v. *Travelers Indemnity Co., supra.* There, an insured sought recovery on an automobile liability policy. The policy recited that the declarations were made a part of the policy. In item 3 of the declarations it was stated that "the named assured has complete ownership of all disclosed automobiles—except as herein stated: No exceptions." The policy recited also that the declarations were true and that the policy was issued upon such statements and in consideration of the provision of the policy respecting its premium. The actual fact was that plaintiff held conditional title only. In a suit upon the policy by the insured for recovery for

damages to the automobile, it was held that, by reason of the express terms of the policy, the truth of the declaration by plaintiff that he had complete ownership of the automobile was a condition precedent to the attaching of the liability under the policy. The court held that plaintiff was bound by that condition and that since the declaration was a condition and not a mere representation or warranty, a Massachusetts statute providing that no misrepresentation or warranty made in the negotiation of a policy of insurance by the insured should be deemed material unless made with actual intent to deceive was inapplicable. In its opinion, on page 206, denying recovery on the policy, the Massachusetts court declared:

"The statement that the plaintiff had complete ownership of the motor vehicle was not true. He did not have complete ownership as the legal title was in the conditional vendor. This statement of the plaintiff was not a mere matter of form: the defect in his title, as was said in *Harvey* v. *Pawtucket Mutual Fire Ins. Co.*, 250 Mass., 164, at page 166, 'went to the essence of the contract of insurance.' It was a condition of the policy. The policy provided that one of its conditions was the truth of the statements numbered 1-5, inclusive, in the 'Declarations.' 'Item 3' of the 'Declarations' stated that the plaintiff had complete ownership. Another provision was that the statements numbered 6-10, inclusive, were conditions to which the policy was subject, and in 'Item 6' the plaintiff reaffirmed and restated all the foregoing declarations except 'Item 4.' The statute, G. L. c 175, Section 186, cannot be relied on to defeat this condition in the policy. If this condition in the policy is not complied with the policy does not attach, and it is not open to the insured to show that a misrepresen-

tation or warranty was not made with the intent to deceive or to increase the risk of loss. * * *''

In the Massachusetts case, the misrepresentations were as to title and the language of the Massachusetts case applies to the present situation. The policies in each case are similar. The Massachusetts case may be distinguished from the instant case on the ground that the misstatement was contained in the application signed by the insured while no application was signed in the instant case. Nonetheless, we find this distinction an insignificant one in the light of the language in the present policy whereby the insured ratified and made authentic the express declarations in the policy, regardless of whether written out or dictated by him or supplied by the company representative.

The two cases from which we have quoted appear to us sound and in line with the principles of insurance law set forth in 22 Ohio Jurisprudence, 603, Section 491, which provides:

''Absolute, Sole, and Unconditional Ownership— Stipulations requiring persons insuring property either to have absolute title or to be sole and unconditional owners, or to state in what respect their interest or title falls short of such a title or ownership, are common to policies insuring property. Nor is there any doubt that a stipulation in a policy that unless otherwise expressed therein or agreed and made a part of the contract by rider anything less than sole and unconditional ownership shall render the policy void is reasonable, valid, and binding upon the insured, there being no fraud. In fact, a stipulation that the policy shall be void if the interest of the insured be other than unconditional and sole ownership is material, reasonable, valid, and enforceable, and a breach

thereof, in the absence of waiver or estoppel, prevents recovery.''

We see no reason why an insurance company and a party desiring insurance should not be able to contract in reliance upon the truthfulness of a given set of facts. It seems particularly logical that where insurance of specified property is contemplated, ownership of that property is a matter of prime concern. In agreeing to insure an automobile or household furniture or other chattels, an insurance company may well take the position that it will insure only the owner and that it may select, if it chooses, only a responsible owner, someone having sufficient interest to take the kind of care of the chattel ordinarily taken by an owner, someone having a monetary stake in the survivorship of the article insured. We are not dealing here with compulsory insurance required by statute for protection of third parties. We are considering rights as between an insurance company and an individual who desires to purchase insurance protection for himself with respect to property in which he presumably has an interest. We see no reason why such individual may not be required to state the nature of his interest in the property or why an insurance company and the insured may not contract that if that interest is misstated the policy shall be void. The fact is that even with respect to insurance of this character, as distinguished from insurance protecting third parties, the public has a vital concern, for insurance rates concern all persons and these rates are necessarily fixed on the basis of the risk involved.

Under the language of the policy involved in the case at bar, it is our view that the contract never became effective by virtue of the misstatement with respect to ownership contained in the declaration. We

note also one other declaration recited in the policy, which the testimony in the trial court established as untrue. We refer to the declaration in item 4 that the automobile was purchased in May 1949. Although counsel for neither party stressed this point, we believe this declaration also was a material declaration which was untrue, constituting sufficient ground for avoidance of the policy. This incorrect statement undoubtedly helped to prevent the insurance company from learning earlier of the circumstances concerning the cancellation of the previous insurance policy based on the three successive accidents. If the insured had truthfully answered the question showing that the car had been acquired in September 1948, the insurance company would have been warned and could have inquired as to whether there had been previous insurance and why it had been cancelled.

Having reached the conclusion that the insurance contract involved in this case never became effective because of the incorrect declaration concerning ownership, we deem it unnecessary to extend this opinion by differentiating the various cases cited by counsel. We should observe, however, that the case of *Washington Fidelity Natl. Ins. Co.* v. *Lacey,* 45 Ohio App., 104, 186 N. E., 751, does not appear to us to be in point. That decision by our court was a suit on a life insurance policy, so that Section 9391, General Code, was applicable. Furthermore, the opinion pointed out that the particular statements claimed to have been incorrectly made by the insured were not shown to be clearly material and the record did not definitely establish that the company was thereby induced to issue the policy.

We have found it unnecessary to base our decision on cases arising under Section 6290-4, General Code.

506

The judgment of the trial court is reversed and final judgment rendered for defendant appellant.

*Judgment reversed.*

Skeel, P. J., and Hurd, J., concur.