**ALLSTATE INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**John George COOK, a minor, et al.,**
Defendants-Appellants.

No. 15257.

United States Court of Appeals
Sixth Circuit.

Nov. 26, 1963.

R. Martin Galvin, Toledo, Ohio (John W. Winn, Jr., Toledo, Ohio, on the brief for John George Cook; Cubbon & Rice, Toledo, Ohio, on the brief for Joseph Gowing), for appellants.

Jamille G. Jamra, of Eastman, Stichter, Smith & Bergman, Toledo, Ohio, for appellee.

Before CECIL, Chief Judge, PHILLIPS, Circuit Judge, and FREEMAN, District Judge.

CECIL, Chief Judge.

Plaintiff-Appellee, Allstate Insurance Company, hereinafter called Allstate, brought this action in the United States District Court for the Northern District of Ohio, Western Division, for a judgment declaring an automobile liability insurance policy issued to the appellant, John George Cook, null and void from the beginning. (Sec. 2201, Title 28 U.S.C.) Jurisdiction was invoked by reason of diversity of citizenship, the amount involved being in excess of $10,000. (Sec. 1332, Title 28 U.S.C.) The case was tried to the court and judgment was awarded to the plaintiff. This appeal followed.

The facts are not much in dispute and are set forth in the trial judge's findings of fact and opinion. On or about May 13, 1961, one of the defendants-appellants, John George Cook, made written application to Allstate for an automobile liability insurance policy. At this time, this appellant, hereinafter called John Cook or Cook, was a minor seventeen years of age. The application was signed by him and his father, George H. Cook.

One of the questions in the application to which John Cook answered "No" is as follows: "Have you or anyone in your household ever had a suspension, revocation or refusal of any automobile license or permit to drive?" Immediately above the signatures of John Cook and his father was the following statement: "I hereby declare the facts stated herein to be true and request the Company to issue the insurance, and any renewals thereof, in reliance thereon." John Cook also answered "No" to a question which appeared on the reverse side of the application as follows: "Has applicant or any driver been fined or arrested for any moving traffic violation in the past 5 years?"

The insurance policy which is an exhibit in the record contains the following provisions: "In reliance upon the Declarations on the Supplement Page and subject to all the terms of this policy and for payment of the premium, *Allstate makes the following agreements with the named insured:*" The supplement page contains an affirmative statement, the substance of which is embodied in the question and answer in the application. (The question first above mentioned.)

On Friday, September 30, 1960, prior to the time the application was signed, John Cook and two or three companions were drinking intoxicating liquor in a tavern. Later that night Cook was apprehended by the police of Toledo, Ohio, while driving a motor vehicle. He was taken into custody and lodged in the county jail for the reason that there was no room in the detention home. On Monday, October 3rd, he appeared before Walter Bouck, Referee of the Juvenile Court Division of the Common Pleas Court of Lucas County, Ohio. Here John Cook admitted driving a motor vehicle while under the influence of intoxicating liquor and was found to be a juvenile traffic offender.

John Cook's license to drive was suspended for two months and he was fined $25.00 and costs of $7.50. He paid the fine in three installments, as follows: October 3, 1960, $5.00; November 5, 1960, $10.00; and December 7, 1960, $17.50. The Juvenile Court, on October 4, 1960, notified the Ohio Bureau of Motor Vehicles of the suspension and fine. Sometime subsequent to this and prior to the time the application was made to Allstate, John Cook received a letter from the Ohio Bureau of Motor Vehicles concerning the assessment of points against him for violation of the traffic laws. He was placed on probation by the Juvenile Court on October 3, 1960. This probation was to be effective until his eighteenth birthday on December 23, 1961. He reported regularly to a juvenile court probation officer during this period.

On August 1, 1961, John Cook was involved in an accident while driving an Oldsmobile automobile described in the insurance policy in question. He and his two companions, Joseph M. Gowing and Dennis VanPelt, received bodily injuries as a result of the accident. Gowing and his mother brought suit in the Common Pleas Court of Lucas County against John Cook for damages for the alleged injuries sustained as a result of the accident.

Allstate first learned of the fine and license suspension on October 24, 1961. It then tendered back the premium paid for the insurance and notified John Cook it was cancelling the policy.

The trial judge found as a fact that the first question stated above was material to Allstate's determination to issue the policy and if John Cook had answered the question in the affirmative, it would not have issued the policy. The judge further found that if the second question had been answered in the affirmative the agent would have made further investigation which would have led to a discovery that John Cook's license had been suspended. These inferences drawn by the trial judge from undisputed facts are not clearly erroneous and therefore must be accepted by this Court. United States v. United States Gypsum Co., 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746; Commissioner v. Duberstein,

363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; In re Plonta, 311 F.2d 44, 46–47, C. A. 6; Commissioner v. Goodwyn Crockery Co., 315 F.2d 110, 113, C.A. 6; Krumholz v. Goff, 315 F.2d 575, 580, C. A. 6.

Such a statement of fact as was contained in the first question and answer and incorporated in the policy, as it was here, constitutes a warranty under Ohio law. "A warranty in the law of insurance is an undertaking of the insured appearing in express writing on the face of the policy, or incorporated therein by proper words of reference or imported therein by implication so as to constitute an essential part of the contract between the parties as completed, upon the literal truth or fulfillment of which the validity of the entire contract depends. An express warranty must be strictly complied with and the insured is not permitted to allege as an excuse for non-compliance that the risk is not affected by a breach thereof, since the parties have agreed that the stipulated facts or acts shall be the basis of the contract. * * * Warranties are affirmative * * * according as they undertake the truth of an existing fact or state of facts. * * * By an affirmative warranty, the insured vouches the truth of an existing fact or state of facts, the untruth of which warranty renders the policy voidable from its inception." Benoy's Ohio Insurance and Negligence Law, 2nd Ed., 199, Section 458.

In Republic Mutual Ins. Co. v. Wilson, 66 Ohio App. 522, 35 N.E.2d 467, a similar question was involved concerning an automobile insurance policy. The court said at p. 524 of 66 Ohio App., at p. 468 of 35 N.E.2d: "We are of the opinion that aside from the express provisions of the policy as to warranties, the statements of Wilson in his application, as to other insurance, the cancellation of the same, and his past accidents, constitute warranties as to material facts which go to the validity of the contract of insurance. As the policy so provides in express terms there is no question but that these statements constitute war-

ranties. If the statements as to material facts are false they void the contract of insurance regardless of the knowledge of their falsity or the intention of the defendant. In such case the policy is void *ab initio*." See Insurance Co. v. Pyle, 44 Ohio St. 19, 4 N.E. 465, and the cases therein cited and Burpo v. Resolute Fire Ins. Co., 90 Ohio App. 492, 107 N.E.2d 227. In Redden v. Constitution Life Ins. Co., 172 Ohio St. 20, at p. 24, 173 N.E. 2d 365, at p. 367, the court said: "One of the elementary principles of insurance law is that nothing more completely vitiates an insurance contract than false answers to material questions in the application."

Counsel for the appellants rely on Spriggs v. Martin, 115 Ohio App. 529, 182 N.E.2d 20, which seems to be in conflict with the cases above cited. In this case the trial judge found as a matter of law and fact that the defense of the insurance company was fraud in the inducement to issue the policy in question. The appellate court was bound to accept the trial judge's findings of fact, unless they were manifestly against the weight of the evidence. Under the defense of fraud the trial judge found that the insurance company must establish the five elements of fraud as claimed by counsel for appellant in his brief.

The court said at p. 531 of 115 Ohio App., at p. 22 of 182 N.E.2d: "There is often only a slight difference in the phraseology of a representation, a warranty, and a condition, but considerable difference in their respective effects. Fraud must usually be proved with respect to a representation whereas the proof of the falsity of a warranty or the failure of a condition may, without proof of fraud, be sufficient to vitiate and void a contract of insurance. A representation tends to induce the underwriter more readily to assume the risk whereas a warranty is a stipulation in writing on the face of the policy, on the literal truth of which the validity of the entire contract depends." See Hartford Protection Ins. Co. v. Harmer, 2 O.S. 452, 463 et seq. The Spriggs v. Martin case, supra,

was decided on the theory of a representation and not a warranty.

█ Counsel for the appellants claim that testimony from the records of juvenile court was improperly admitted into evidence and that without such testimony the evidence would be insufficient to sustain the judgment of the District Court. This claim is based on a portion of Section 2151.35, Ohio Revised Code, which is as follows: "The disposition of a child under the judgment rendered or any evidence given in the court shall not be admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation."

We need not pass on the applicability of this statute. There was sufficient testimony in the record, aside from the juvenile court records, to sustain the findings of fact made by the trial judge. John Cook's own testimony disclosed the arrest for driving while under the influence of intoxicating liquor, the suspension or withholding of his driver's license for two months, and the payment of a fine of $25.00 and costs. It also disclosed that he was put on probation until his eighteenth birthday and that he made regular reports to the juvenile probation officer during that time. The juvenile court made a report of its action to the Bureau of Motor Vehicles of Ohio and Cook admitted receiving a letter from it assessing points against him. Testimony from this bureau would have been available and would have shown the record of suspension. We find no prejudicial error in the admission of the juvenile court records. No substantial rights of the appellant were affected. Rule 61, Federal Rules of Civil Procedure.

█ Finally, it is claimed on behalf of the appellant that John Cook's answer to the question was not untruthful for the reason that the purported judgment fining him $25.00 and costs, suspending his license and finding him to be a juvenile traffic offender was not a valid one. This was in face of the actual facts that his license was withheld from him by juvenile court for two months, that he paid a fine of $25.00 and costs of $7.50 in three installments and that a report of a license suspension was sent to the Bureau of Motor Vehicles. Cook knew of this report to the Bureau of Motor Vehicles because he received a letter from it assessing points against him. At the same time he was placed on probation and was required to make regular reports to a probation officer until he was eighteen years of age. At the time John Cook made application for insurance with Allstate he did not know of any defect in his juvenile court proceedings. He was not aware that the fictitious answer which he gave to the question, concerning suspension of his license, might subsequently be claimed to be true, because what had actually happened to him in fact, had not really happened by reason of some legal technicality.

The juvenile records were subpoenaed into court by counsel for appellants. When counsel for John Cook first examined these records in preparation for trial, the recommendations of the referee were journalized but the journal entry was not signed by the juvenile judge. The records were complete in every other respect. The judge did sign the entry when the apparent oversight was called to his attention, which was subsequent to the bringing of this action in the District Court by Allstate.

The Juvenile Court Act of Ohio (Sec. 2151.01 et seq., Ohio Revised Code) is in conformity with modern thinking and practice concerning the best means of handling juvenile offenders. The procedure is very informal. The juvenile is surrounded with every protection to avoid publicity in newspapers, to avoid public hearings and to prevent him from being charged with a criminal record. The practice of hearings before referees is recognized procedure. (Sec. 2151.16, Ohio Revised Code.) It is the purpose of the Act that the procedure shall be a

shield for the protection of the juvenile and not a sword in his hands. There were here all of the elements of a valid judgment but the judge's signature. When signed by him it was judicial approval of the action and recommendations of the referee. We are unmoved by this hypertechnical defense to try to make truth out of what was obviously and knowingly fiction.

Judgment of the District Court is affirmed.