Herbert A. May, Petitioner v. Commissioner.
May v. Commissioner
Docket Nos. 72454, 76631, 79952.
United States Tax Court
T.C. Memo 1961-343; 1961 Tax Ct. Memo LEXIS 8; 20 T.C.M. (CCH) 1793; T.C.M. (RIA) 61343; December 26, 1961
Lee W. Eckels, Esq., Grant Bldg., Pittsburgh, Pa., and William W. Scott, Jr., Esq., for the petitioner. Gerald Backer, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income taxes as follows: Addition to the
Tax Under Sec-
Docket
tion 294(d),
Year
No.
Deficiency
I.R.C. of 1939
1953
72454
$3,472.23
$3,830.19
1954
72454
5,320.41
3,796.01
Addition to the
Tax Under Sec-
tion 6654,
I.R.C. of 1954
1955
79952
$3,833.56
$ 776.42
Addition to the
Tax Under Sec-
tion 6654,
I.R.C. of 1954
1956
76631
$5,363.72 *
$ 528.42
*9 The questions presented are: (1) whether the Commissioner erred in disallowing as personal and unsubstantiated a portion of certain expenses claimed by petitioner; and (2) whether all or any part of an amount received by petitioner from his employer in 1956 constituted taxable income. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. Petitioner, an individual residing in Pittsburgh, Pennsylvania, filed his Federal income tax returns for the years 1953, 1954, 1955 and 1956 with the director of internal revenue for the western district of Pennsylvania at Pittsburgh. During the years 1946 through 1951 petitioner was employed by the Westinghouse Air Brake Company (hereinafter referred to as Air Brake) and/or its subsidiary, The Union Switch & Signal Company (hereinafter referred to as Union Switch) as vice president in charge of sales. He was also a director of both companies. In 1951 Air Brake and Union Switch merged and petitioner continued to be a director and senior vice president of Air Brake, the surviving corporation, until his retirement in 1959. In the course of his employment, petitioner was required to entertain actual *10 and prospective customers. The funds expended for such entertainment included not only funds advanced or reimbursed to him, but also his own personal funds derived from his compensation and other sources, for which he received no reimbursement. As a consequence of audits of petitioner's returns for the years 1946 through 1952, notices of deficiencies were issued for those years. Petitioner within the prescribed time petitioned the Tax Court of the United States (Docket Nos. 50809 and 58046). One of the questions presented was whether petitioner had substantiated deductions for traveling, entertainment and promotion expenses claimed to have been incurred on behalf of his employer for which he had not received reimbursement. The Commissioner disallowed an aggregate of $145,846.04 of the amounts claimed. However, petitioner during the course of negotiations to settle after the cases had been docketed proposed that only $71,174.67 of the claimed unreimbursed expenses be disallowed. This proposal was subsequently accepted by the Commissioner, and the settlement of this issue along with the remaining issues resulted in deficiencies due for the years at issue of $90,463.87 which included *11 penalties and interest. Counsel for petitioner in his proposal to settle stated that if the proposal was accepted, petitioner would pay $75,000 in cash immediately but would need a period of one year to pay the balance. However, petitioner did not have sufficient personal resources to raise the $75,000 which prompted him in a letter dated March 8, 1956 to make the following request: Executive Committee, Board of Directors, Westinghouse Air Brake Company, Gateway Center, Pittsburgh, Pennsylvania
Gentlemen: As you know, I have been having a struggle with the Bureau of Internal Revenue for several years over my tax returns concerning deductions for expenses which have been disallowed. The Bureau has been claiming against me approximately $233,000, including $50,000 of penalties, but exclusive of interest, for the seven years from 1946 to 1952 involved in these cases, which will come to trial the week of March 12 unless they are settled. My counsel and accountants have gone over in great detail the deductions which I claimed and have arrived at a point where they recommend that the cases be settled. A great deal of the difficulty arises because of certain moneys which I disbursed *12 for the benefit of the Company and deducted on my own income tax return without reimbursement by the Company. This is a practice which originated years ago at a time when Mr. Blackmore was anxious not to have my expense accounts out of line with others. He knew that I was expending considerable sums of money in addition to what appeared on my expense accounts paid by the Company and the Bureau has disallowed those items, claiming that although they were spent for the Company they should have been included on the Company expense account and that I am not entitled to a personal deduction for them. After many months of auditing and negotiating I have an opportunity to settle the tax, interest and penalties involved by the payment of approximately $88,000. The compromise has been arrived at by getting the Department to allow a certain percentage of the business deductions. It would be impossible for me to settle this tax unless the Company is willing to reimburse me for the expenses which I have paid for the Company's benefit but which are disallowed to me personally. Apportioning this settlement on the basis of the part of the liability arising from claimed deductions for business *13 expense, my counsel, Thorp, Reed & Armstrong, state that in their opinion about $75,000 of the $88,000 is attributable to disbursements made on behalf of the Company for which deductions on my personal returns have been disallowed. I can settle the matter by paying $75,000 and getting the balance spread over a period of a couple of years. If I do not settle the cases and we have to go to trial, I am going to have to give the names of a great many customers that I have entertained at times to account for my claimed deductions. If you are willing to reimburse me for such disallowed business expenses to the extent of $75,000, I will apply such amount to the tax settlement. I am advised that such payment will not be income to me, but if at any later date it should be held otherwise, I would prefer to treat the matter as a loan and at that time give the Company a note for $75,000. In other words, I do not want to have to pay income tax on the $75,000, which is less than the amount of my disbursements for the benefit of the Company. Yours very truly, Herbert A. May [Signed] Petitioner's request was granted and the following notation was made on his letter of March 8, 1956: Reimbursement *14 of business expense in amount of $75,000.00 approved. 3/14/56, E. O. Boshell [Signed], Edwin Hodge, Jr. [Signed] E. O. Boshell was chairman of the board, president, chief executive officer, a director and a member of the executive committee of the board of directors of Air Brake. The other signer, Edwin Hodge, Jr. was a director and chairman of the executive committee of the board of directors of Air Brake. Air Brake at the direction of counsel for petitioner issued and delivered its check in the amount of $75,000 to petitioner's counsel who remitted the $75,000 to the Government in partial satisfaction of the deficiencies owed. Petitioner did not submit any regular or usual form of expense account or other substantiating documents to Air Brake in connection with the payment to him of the $75,000. However, Air Brake did not consider the payment to be salary or a loan to petitioner and it was recorded by Air Brake as a miscellaneous administrative expense which it claimed as a deduction on its 1956 Federal corporate income tax return. Petitioner did not include the $75,000 received in 1956 in gross income in his tax return for that year. The Commissioner in an amendment *15 to his second amended answer alleged that the $75,000 which petitioner received in 1956 from Air Brake constituted gross income within the purview of section 61, Internal Revenue Code of 1954. During the years 1953 through 1956 petitioner reported on his Federal income tax return the following salaries paid, employment taxes, safe deposit box rental and business and traveling expenses less reimbursement received for such expenses: 1953
1954
1955
1956
(1) Salary - C. F. Markland, Secretary
$ 2,400.00
$ 2,400.00
$ 2,400.00
$ 2,400.00
(2) Salary - M. E. Grosglass, Stenographer
1,320.00
1,320.00
1,320.00
1,320.00
(3) Social Security and Unemployment Taxes
116.44
93.00
104.16
78.12
(4) Safe Deposit Box
12.00
26.00
(5) Business and traveling expenses
10,478.71
11,139.89
7,553.78
4,051.99
Total
$14,327.15
$14,952.89
$11,377.94
$ 7,876.11
Less: Reimbursements -
The Pennroad Corp.
485.00
N. Y., Chicago & St. Louis R. R. Co.
536.00
646.23
502.00
608.24
Rolling Rock Hunt Racing Association
204.57
Ticket Cancellations
34.77
Canadian Westinghouse, Ltd.
100.00
Old Town Corp.
47.27
Balance
$12,919.54
$14,306.66
$10,875.94
$ 7,267.87
*16 Charles F. Markland, to whom petitioner paid a salary of $2,400 per year, was also employed as the assistant secretary of Air Brake. Markland lived at petitioner's home and assisted petitioner in his personal affairs and also entertained business acquaintances of petitioner. One of his duties was maintaining petitioner's records which include schedules listing all of petitioner's expenditures by payee and check number. These records were then turned over to petitioner's attorney who prepared his Federal income tax returns. Mabel Grosglass, who received a salary of $1,320 per year from petitioner, was also his secretary at Air Brake. She prepared petitioner's monthly expense accounts which were submitted for reimbursement, in addition to performing numerous personal services for petitioner. The Commissioner in computing the deficiencies for the years 1953 through 1956 disallowed the amounts claimed by petitioner as follows: 1953
1954
1955
1956
(1) Markland Salary
$1,200.00
$1,200.00
$1,200.00
$1,200.00
(2) Grosglass Salary
660.00
660.00
660.00
660.00
(3) Employment taxes
58.22
46.50
52.08
39.06
(4) Safe deposit box
6.00
(5) Unreimbursed business and tra-
veling expenses
4,191.48
3,656.32
2,820.71
1,377.50
$6,115.70
$5,562.82
$4,732.79
$3,276.56
*17 Opinion For the years 1953 through 1956 the Commissioner disallowed in part expenses claimed by petitioner for salaries paid, employment taxes, safe deposit box rental and traveling and entertainment expenses. The salaries were paid to Charles F. Markland and Mabel Grosglass and the Commissioner, contending that they performed personal services for petitioner, disallowed 50 percent of the salary paid to each. Both testified at the trial that they did perform personal services and petitioner has not shown that the Commissioner's disallowance of 50 percent of the salaries as attributable to such personal services was erroneous. No evidence was introduced concerning the safe deposit box rental and accordingly the Commissioner's determination is presumed to be correct. With respect to the traveling and entertainment expenses the Commissioner disallowed 40 percent of the amounts claimed by petitioner. Petitioner argues that the amounts claimed were expended on behalf of Air Brake and are deductible as unreimbursed business expenses. The Commissioner concedes that petitioner was required to incur expenses on behalf of Air Brake that exceeded his advances and reimbursements. However, *18 the Commissioner contends that the portion disallowed represents personal living expenses and not business expenses. Although the stipulation of the parties included a list of checks with their respective payees, petitioner when he testified made no attempt to explain how the expenditures either generally or specifically related to the business of Air Brake. However, petitioner now maintains that we should infer from the various payees that the amounts must have been expended for business reasons. Without making the numerous assumptions advocated by petitioner we are unable to find evidence sufficient to overcome the presumption of correctness that attaches to the Commissioner's determinations and we must sustain the Commissioner. The Commissioner for the years 1946 through 1952 had determined deficiencies in income taxes of petitioner and petitions were filed in this Court. One of the issues presented involved the deduction of unreimbursed expenses. For the years involved petitioner claimed unreimbursed expenses totaling $145,846.04. After the cases were docketed the parties entered into negotiations to compromise and as shown in our findings a proposal was submitted by petitioner *19 to disallow $71,174.67 of the claimed unreimbursed expenses which proposal was subsequently accepted by the Commissioner. The other issues were also settled and in order to pay the deficiencies, penalties and interest arising from the settlement, petitioner requested Air Brake "to reimburse me for such disallowed business expenses." Petitioner's request was approved by Air Brake and in 1956 it paid him $75,000. The Commissioner in an amendment to his second amended answer alleged that the $75,000 paid to petitioner by Air Brake in 1956 constituted taxable income within the purview of section 61, Internal Revenue Code of 1954. [1] On this issue the Commissioner has the burden of proving the correctness of his allegation. Rule 32, Rules of Practice, Tax Court of the United States. After carefully reviewing the evidence presented we agree with the Commissioner that the $75,000 paid to petitioner by Air Brake was taxable income. In the letter requesting the $75,000 which is set forth in full *20 in the findings of fact, petitioner stated: I can settle the matter by paying $75,000 and getting the balance spread over a period of a couple of years. If I do not settle the cases and we have to go to trial, I am going to have to give the names of a great many customers that I have entertained at times to account for my claimed deductions. And E. O. Boshell, chairman of the board, president and chief executive officer of Air Brake when queried at the trial concerning his motivations for approving such payment stated: Q. What effect on your decision was the fact that Mr. May would have to have called these important customers at a trial of this case? A. Well, it would have been, I think, extremely embarrassing and detrimental to the company. Similarly Edwin Hodge, a director and chairman of the executive committee who with Boshell approved the payment testified: Q. Was Westinghouse Air Brake Company disturbed by the fact that Mr. May was having difficulty with his taxes? A. Well, I certainly was. Q. Were you disturbed as a friend or also as an executive of the company? A. As an executive of the company. Q. As an executive of the company, Mr. Hodge? A. Yes. *21 Q. Were you apprised Mr. May needed the $75,000 to close out his taxes for the years 1955-1956? A. I knew nothing about his tax status other than this situation. Q. What is in the letter? A. Yes. Q. Do you feel it would be beneficial to the company if Mr. May could clear up his tax situation? A. Naturally. Q. Then I take it that was one of the considerations in making this payment? A. That was one. There were others. It is clear from Boshell's testimony that the payment was approved for the primary reason that the company did not want petitioner's case brought to trial, the feeling being that an open trial would be "extremely embarrassing and detrimental to the company." In addition it can be gleaned from the testimony of Hodge that petitioner's inability to pay his taxes was a source of concern to Air Brake and that a settlement of his tax affairs would be beneficial to the corporation. Petitioner contends that the $75,000 was reimbursement for expenses and as such was a nontaxable return of capital. He argues that the instant case is similar to the situation presented to this Court in Henry F. Cochrane, 23 B.T.A. 202 (1931). In Cochrane, the taxpayer, *22 a lawyer, made numerous expenditures on behalf of his client in a divorce action. The client agreed that after the divorce had been obtained she would pay whatever expenses were involved. This Court held that the expenditures were not deductible as ordinary and necessary business expenses as "the amounts expended * * * in obtaining this divorce constituted advancements by [the taxpayer] on behalf of [his client] for which she had agreed to reimburse him." Continuing, we pointed out that inasmuch as the amounts expended constituted advancements "it necessarily follows that when they were repaid * * * they did not constitute income * * *." We think the instant proceedings are easily distinguishable from Cochrane as there is no evidence in the case before us that the amounts when expended were in the nature of loans or advancements or that petitioner had a right to reimbursement. Here counsel for petitioner stated at the trial that petitioner "had no right to reimbursement of the particular expenses." And from the tenor of the letter requesting the $75,000 it is obvious that petitioner did not have a right to reimbursement and was concerned about the possible tax consequences flowing *23 from the payment he requested. In the letter he stated that: If you are willing to reimburse me for such disallowed business expenses to the extent of $75,000, I will apply such amount to the tax settlement. I am advised that such payment will not be income to me, but if at any later date it should be held otherwise, I would prefer to treat the matter as a loan and at that time give the Company a note for $75,000. In other words, I do not want to have to pay income tax on the $75,000, which is less than the amount of my disbursements for the benefit of the Company. Air Brake deducted the $75,000 as a miscellaneous administrative expense on its 1956 return and we believe that the corporation's treatment of the payment when considered in conjunction with the testimony of Boshell and Hodge negates any contention that a donative intent existed. Accordingly, we hold that the $75,000 received by petitioner in 1956 from Air Brake was neither a return of capital nor a gift, but taxable income. Commissioner v. Duberstein, 363 U.S. 278 (1960). Decisions will be entered under Rule 50. Footnotes
*. An increased deficiency of $65,114.58 for 1956 was claimed by respondent in a Second Amended Answer filed prior to trial hereof, on August 5, 1959.↩
1. Sec. 61↩ [1954 Code]. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, * * *