# COMMISSIONER OF INTERNAL REVENUE *v.* DUBERSTEIN ET UX.

No. 376. Argued March 23, 1960.—Decided June 13, 1960.*

---

*Together with No. 546, *Stanton et ux.* v. *United States*, on certiorari to the United States Court of Appeals for the Second Circuit, argued March 24, 1960.

*Philip Elman* argued the cause for petitioner in No. 376. On the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Wayne G. Barnett.*

*Clendon H. Lee* argued the cause for petitioners in No. 546. With him on the brief were *John C. Farber, William F. Snyder* and *Theodore Q. Childs.*

*Sidney G. Kusworm* argued the cause and filed a brief for respondents in No. 376.

*Wayne G. Barnett* argued the cause for the United States in No. 546. With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Rice.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

These two cases concern the provision of the Internal Revenue Code which excludes from the gross income of an income taxpayer "the value of property acquired by

gift."[1] They pose the frequently recurrent question whether a specific transfer to a taxpayer in fact amounted to a "gift" to him within the meaning of the statute. The importance to decision of the facts of the cases requires that we state them in some detail.

No. 376, *Commissioner* v. *Duberstein*. The taxpayer, Duberstein,[2] was president of the Duberstein Iron & Metal Company, a corporation with headquarters in Dayton, Ohio. For some years the taxpayer's company had done business with Mohawk Metal Corporation, whose headquarters were in New York City. The president of Mohawk was one Berman. The taxpayer and Berman had generally used the telephone to transact their companies' business with each other, which consisted of buying and selling metals. The taxpayer testified, without elaboration, that he knew Berman "personally" and had known him for about seven years. From time to time in their telephone conversations, Berman would ask Duberstein whether the latter knew of potential customers for some of Mohawk's products in which Duberstein's company itself was not interested. Duberstein provided the names of potential customers for these items.

One day in 1951 Berman telephoned Duberstein and said that the information Duberstein had given him had proved so helpful that he wanted to give the latter a present. Duberstein stated that Berman owed him nothing. Berman said that he had a Cadillac as a gift for Duberstein, and that the latter should send to New York for it; Berman insisted that Duberstein accept the car, and the latter finally did so, protesting however that

---

[1] The operative provision in the cases at bar is § 22 (b) (3) of the 1939 Internal Revenue Code. The corresponding provision of the present Code is § 102 (a).

[2] In both cases the husband will be referred to as the taxpayer, although his wife joined with him in joint tax returns.

he had not intended to be compensated for the information. At the time Duberstein already had a Cadillac and an Oldsmobile, and felt that he did not need another car. Duberstein testified that he did not think Berman would have sent him the Cadillac if he had not furnished him with information about the customers. It appeared that Mohawk later deducted the value of the Cadillac as a business expense on its corporate income tax return.

Duberstein did not include the value of the Cadillac in gross income for 1951, deeming it a gift. The Commissioner asserted a deficiency for the car's value against him, and in proceedings to review the deficiency the Tax Court affirmed the Commissioner's determination. It said that "The record is significantly barren of evidence revealing any intention on the part of the payor to make a gift. . . . The only justifiable inference is that the automobile was intended by the payor to be remuneration for services rendered to it by Duberstein." The Court of Appeals for the Sixth Circuit reversed. 265 F. 2d 28.

No. 546, *Stanton* v. *United States.* The taxpayer, Stanton, had been for approximately 10 years in the employ of Trinity Church in New York City. He was comptroller of the Church corporation, and president of a corporation, Trinity Operating Company, the church set up as a fully owned subsidiary to manage its real estate holdings, which were more extensive than simply the church property. His salary by the end of his employment there in 1942 amounted to $22,500 a year. Effective November 30, 1942, he resigned from both positions to go into business for himself. The Operating Company's directors, who seem to have included the rector and vestrymen of the church, passed the following resolution upon his resignation: "BE IT RESOLVED that in appreciation of the services rendered by Mr. Stanton . . . a gratuity is hereby awarded to him of Twenty Thousand Dollars, payable to him in equal instalments of Two Thousand Dollars

at the end of each and every month commencing with the month of December, 1942; provided that, with the discontinuance of his services, the Corporation of Trinity Church is released from all rights and claims to pension and retirement benefits not already accrued up to November 30, 1942."

The Operating Company's action was later explained by one of its directors as based on the fact that, "Mr. Stanton was liked by all of the Vestry personally. He had a pleasing personality. He had come in when Trinity's affairs were in a difficult situation. He did a splendid piece of work, we felt. Besides that . . . he was liked by all of the members of the Vestry personally." And by another: "[W]e were all unanimous in wishing to make Mr. Stanton a gift. Mr. Stanton had loyally and faithfully served Trinity in a very difficult time. We thought of him in the highest regard. We understood that he was going in business for himself. We felt that he was entitled to that evidence of good will."

On the other hand, there was a suggestion of some ill-feeling between Stanton and the directors, arising out of the recent termination of the services of one Watkins, the Operating Company's treasurer, whose departure was evidently attended by some acrimony. At a special board meeting on October 28, 1942, Stanton had intervened on Watkins' side and asked reconsideration of the matter. The minutes reflect that "resentment was expressed as to the 'presumptuous' suggestion that the action of the Board, taken after long deliberation, should be changed." The Board adhered to its determination that Watkins be separated from employment, giving him an opportunity to resign rather than be discharged. At another special meeting two days later it was revealed that Watkins had not resigned; the previous resolution terminating his services was then viewed as effective; and the Board voted the payment of six months' salary

to Watkins in a resolution similar to that quoted in regard to Stanton, but which did not use the term "gratuity." At the meeting, Stanton announced that in order to avoid any such embarrassment or question at any time as to his willingness to resign if the Board desired, he was tendering his resignation. It was tabled, though not without dissent. The next week, on November 5, at another special meeting, Stanton again tendered his resignation which this time was accepted.

The "gratuity" was duly paid. So was a smaller one to Stanton's (and the Operating Company's) secretary, under a similar resolution, upon her resignation at the same time. The two corporations shared the expense of the payments. There was undisputed testimony that there were in fact no enforceable rights or claims to pension and retirement benefits which had not accrued at the time of the taxpayer's resignation, and that the last proviso of the resolution was inserted simply out of an abundance of caution. The taxpayer received in cash a refund of his contributions to the retirement plans, and there is no suggestion that he was entitled to more. He was required to perform no further services for Trinity after his resignation.

The Commissioner asserted a deficiency against the taxpayer after the latter had failed to include the payments in question in gross income. After payment of the deficiency and administrative rejection of a refund claim, the taxpayer sued the United States for a refund in the District Court for the Eastern District of New York. The trial judge, sitting without a jury, made the simple finding that the payments were a "gift,"[3] and judgment was entered for the taxpayer. The Court of Appeals for the Second Circuit reversed. 268 F. 2d 727.

The Government, urging that clarification of the problem typified by these two cases was necessary, and that

---

[3] See note 14, *infra*.

the approaches taken by the Courts of Appeals for the Second and the Sixth Circuits were in conflict, petitioned for certiorari in No. 376, and acquiesced in the taxpayer's petition in No. 546. On this basis, and because of the importance of· the question in the administration of the income tax laws, we granted certiorari in both cases. 361 U. S. 923.

The exclusion of property acquired by gift from gross income under the federal income tax laws was made in the first income tax statute [4] passed under the authority of the Sixteenth Amendment, and has been a feature of the income tax statutes ever since. The meaning of the term "gift" as applied to particular transfers has always been a matter of contention.[5] Specific and illuminating legislative history on the point does not appear to exist. Analogies and inferences drawn from other revenue provisions, such as the estate and gift taxes, are dubious. See *Lockard* v. *Commissioner*, 166 F. 2d 409. The meaning of the statutory term has been shaped largely by the decisional law. With this, we turn to the contentions made by the Government in these cases.

*First.* The Government suggests that we promulgate a new "test" in this area to serve as a standard to be applied by the lower courts and by the Tax Court in dealing with the numerous cases that arise.[6] We reject this invitation. We are of opinion that the governing principles are necessarily general and have already been spelled out in the opinions of this Court, and that the problem is one which, under the present statutory framework, does not lend itself to any more definitive statement

---

[4] § II.B., c. 16, 38 Stat. 167.

[5] The first case of the Board of Tax Appeals officially reported in fact deals with the problem. *Parrott* v. *Commissioner*, 1 B. T. A. 1.

[6] The Government's proposed test is stated: "Gifts should be defined as transfers of property made for personal as distinguished from business reasons."

that would produce a talisman for the solution of concrete cases. The cases at bar are fair examples of the settings in which the problem usually arises. They present situations in which payments have been made in a context with business overtones—an employer making a payment to a retiring employee; a businessman giving something of value to another businessman who has been of advantage to him in his business. In this context, we review the law as established by the prior cases here.

The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716, 730. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, *Bogardus* v. *Commissioner,* 302 U. S. 34, 41, it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." *Robertson* v. *United States,* 343 U. S. 711, 714.[7] A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," *Commissioner* v. *LoBue,* 351 U. S. 243, 246; "out of affection, respect, admiration, charity or like impulses." *Robertson* v. *United States, supra,* at 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "inten-

---

[7] The cases including "tips" in gross income are classic examples of this. See, *e. g., Roberts* v. *Commissioner,* 176 F. 2d 221.

tion." *Bogardus* v. *Commissioner*, 302 U. S. 34, 43. "What controls is the intention with which payment, however voluntary, has been made." *Id.*, at 45 (dissenting opinion).[8]

The Government says that this "intention" of the transferor cannot mean what the cases on the common-law concept of gift call "donative intent." With that we are in agreement, for our decisions fully support this. Moreover, the *Bogardus* case itself makes it plain that the donor's characterization of his action is not determinative—that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U. S., at 40. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter.

It is suggested that the *Bogardus* criterion would be more apt if rephrased in terms of "motive" rather than "intention." We must confess to some skepticism as to whether such a verbal mutation would be of any practical consequence. We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer. Further than that we do not think it profitable to go.

---

[8] The parts of the *Bogardus* opinion which we touch on here are the ones we take to be basic to its holding, and the ones that we read as stating those governing principles which it establishes. As to them we see little distinction between the views of the Court and those taken in dissent in *Bogardus*. The fear expressed by the dissent at 302 U. S., at 44, that the prevailing opinion "seems" to hold "that every payment which in any aspect is a gift is . . . relieved of any tax" strikes us now as going beyond what the opinion of the Court held in fact. In any event, the Court's opinion in *Bogardus* does not seem to have been so interpreted afterwards. The principal difference, as we see it, between the Court's opinion and the dissent lies in the weight to be given the findings of the trier of fact.

*Second.* The Government's proposed "test," while apparently simple and precise in its formulation, depends frankly on a set of "principles" or "presumptions" derived from the decided cases, and concededly subject to various exceptions; and it involves various corollaries, which add to its detail. Were we to promulgate this test as a matter of law, and accept with it its various presuppositions and stated consequences, we would be passing far beyond the requirements of the cases before us, and would be painting on a large canvas with indeed a broad brush. The Government derives its test from such propositions as the following: That payments by an employer to an employee, even though voluntary, ought, by and large, to be taxable; that the concept of a gift is inconsistent with a payment's being a deductible business expense; that a gift involves "personal" elements; that a business corporation cannot properly make a gift of its assets. The Government admits that there are exceptions and qualifications to these propositions. We think, to the extent they are correct, that these propositions are not principles of law but rather maxims of experience that the tribunals which have tried the facts of cases in this area have enunciated in explaining their factual determinations. Some of them simply represent truisms: it doubtless is, statistically speaking, the exceptional payment by an employer to an employee that amounts to a gift. Others are overstatements of possible evidentiary inferences relevant to a factual determination on the totality of circumstances in the case: it is doubtless relevant to the over-all inference that the transferor treats a payment as a business deduction, or that the transferor is a corporate entity. But these inferences cannot be stated in absolute terms. Neither factor is a shibboleth. The taxing statute does not make nondeductibility by the transferor a condition on the "gift" exclusion; nor does it draw any distinction, in terms, between transfers by corporations

and individuals, as to the availability of the "gift" exclusion to the transferee. The conclusion whether a transfer amounts to a "gift" is one that must be reached on consideration of all the factors.

Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability, or of the propriety, as a matter of fiduciary or corporate law, attaching to the conduct of someone else. The major corollary to the Government's suggested "test" is that, as an ordinary matter, a payment by a corporation cannot be a gift, and, more specifically, there can be no such thing as a "gift" made by a corporation which would allow it to take a deduction for an ordinary and necessary business expense. As we have said, we find no basis for such a conclusion in the statute; and if it were applied as a determinative rule of "law," it would force the tribunals trying tax cases involving the donee's liability into elaborate inquiries into the local law of corporations or into the peripheral deductibility of payments as business expenses. The former issue might make the tax tribunals the most frequent investigators of an important and difficult issue of the laws of the several States, and the latter inquiry would summon one difficult and delicate problem of federal tax law as an aid to the solution of another.[9] Or perhaps there would be required a trial of the vexed issue whether there was a "constructive" distribution of corporate property, for income tax purposes, to the corporate

---

[9] Justice Cardozo once described in memorable language the inquiry into whether an expense was an "ordinary and necessary" one of a business: "One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." *Welch* v. *Helvering,* 290 U. S. 111, 115. The same comment well fits the issue in the cases at bar.

agents who had sponsored the transfer.[10] These considerations, also, reinforce us in our conclusion that while the principles urged by the Government may, in nonabsolute form as crystallizations of experience, prove persuasive to the trier of facts in a particular case, neither they, nor any more detailed statement than has been made, can be laid down as a matter of law.

*Third.* Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact. *Baker* v. *Texas & Pacific R. Co.,* 359 U. S. 227; *Commissioner* v. *Heininger,* 320 U. S. 467, 475; *United States* v. *Yellow Cab Co.,* 338 U. S. 338, 341; *Bogardus* v. *Commissioner, supra,* at 45 (dissenting opinion).[11]

---

[10] Cf., *e. g., Nelson* v. *Commissioner,* 203 F. 2d 1.

[11] In *Bogardus,* the Court was divided 5 to 4 as to the scope of review to be extended the fact-finder's determination as to a specific receipt, in a context like that of the instant cases. The majority held that such a determination was "a conclusion of law or at least a determination of a mixed question of law and fact." 302 U. S., at 39. This formulation it took as justifying it in assuming a fairly broad standard of review. The dissent took a contrary view. The approach of this part of the Court's ruling in *Bogardus,* which we think was the only part on which there was real division among the Court, see note 8, *supra,* has not been afforded subsequent respect here. In *Heininger,* a question presenting at the most elements no more factual and untechnical than those here—that of the "ordinary and necessary" nature of a business expense—was treated as one of fact. Cf. note 9, *supra.* And in *Dobson* v. *Commissioner,* 320 U. S. 489, 498, n. 22, *Bogardus* was adversely criticized, insofar as it

This conclusion may not satisfy an academic desire for tidiness, symmetry and precision in this area, any more than a system based on the determinations of various fact-finders ordinarily does. But we see it as implicit in the present statutory treatment of the exclusion for gifts, and in the variety of forums in which federal income tax cases can be tried. If there is fear of undue uncertainty or overmuch litigation, Congress may make more precise its treatment of the matter by singling out certain factors and making them determinative of the matter, as it has done in one field of the "gift" exclusion's former application, that of prizes and awards.[12] Doubtless diversity of result will tend to be lessened somewhat since federal income tax decisions, even those in tribunals of first instance turning on issues of fact, tend to be reported, and since there may be a natural tendency of professional triers of fact to follow one another's determinations, even as to factual matters. But the question here remains basically one of fact, for determination on a case-by-case basis.

One consequence of this is that appellate review of determinations in this field must be quite restricted. Where a jury has tried the matter upon correct instruc-

treated the matter as reviewable as one of law. While *Dobson* is, of course, no longer the law insofar as it ordains a greater weight to be attached to the findings of the Tax Court than to those of any other fact-finder in a tax litigation, see note 13, *infra*, we think its criticism of this point in the *Bogardus* opinion is sound in view of the dominant importance of factual inquiry to decision of these cases.

[12] I. R. C., § 74, which is a provision new with the 1954 Code. Previously, there had been holdings that such receipts as the "Pot O' Gold" radio giveaway, *Washburn* v. *Commissioner*, 5 T. C. 1333, and the Ross Essay Prize, *McDermott* v. *Commissioner*, 80 U. S. App. D. C. 176, 150 F. 2d 585, were "gifts." Congress intended to obviate such rulings. S. Rep. No. 1622, 83d Cong., 2d Sess., p. 178. We imply no approval of those holdings under the general standard of the "gift" exclusion. Cf. *Robertson* v. *United States, supra.*

tions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue. *Baker* v. *Texas & Pacific R. Co., supra,* at 228. Where the trial has been by a judge without a jury, the judge's findings must stand unless "clearly erroneous." Fed. Rules Civ. Proc., 52 (a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States* v. *United States Gypsum Co.,* 333 U. S. 364, 395. The rule itself applies also to factual inferences from undisputed basic facts, *id.,* at 394, as will on many occasions be presented in this area. Cf. *Graver Tank & Mfg. Co.* v. *Linde Air Products Co.,* 339 U. S. 605, 609–610. And Congress has in the most explicit terms attached the identical weight to the findings of the Tax Court. I. R. C., § 7482 (a).[13]

*Fourth.* A majority of the Court is in accord with the principles just outlined. And, applying them to the *Duberstein* case, we are in agreement, on the evidence we have set forth, that it cannot be said that the conclusion of the Tax Court was "clearly erroneous." It seems to us plain that as trier of the facts it was warranted in concluding that despite the characterization of the transfer of the Cadillac by the parties and the absence of any obligation, even of a moral nature, to make it, it was

---

[13] "The United States Courts of Appeals shall have exclusive jurisdiction to review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. . . ." The last words first came into the statute through an amendment to § 1141 (a) of the 1939 Code in 1948 (§ 36 of the Judicial Code Act, 62 Stat. 991). The purpose of the 1948 legislation was to remove from the law the favored position (in comparison with District Court and Court of Claims rulings in tax matters) enjoyed by the Tax Court under this Court's ruling in *Dobson* v. *Commissioner,* 320 U. S. 489. Cf. note 11, *supra.* See *Grace Bros., Inc.,* v. *Commissioner,* 173 F. 2d 170, 173.

at bottom a recompense for Duberstein's past services, or an inducement for him to be of further service in the future. We cannot say with the Court of Appeals that such a conclusion was "mere suspicion" on the Tax Court's part. To us it appears based in the sort of informed experience with human affairs that fact-finding tribunals should bring to this task.

As to *Stanton,* we are in disagreement. To four of us, it is critical here that the District Court as trier of fact made only the simple and unelaborated finding that the transfer in question was a "gift." [14] To be sure, conciseness is to be strived for, and prolixity avoided, in findings; but, to the four of us, there comes a point where findings become so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standard may be. See *Matton Oil Transfer Corp.* v. *The Dynamic,* 123 F. 2d 999, 1000–1001. Such conclusory, general findings do not constitute compliance with Rule 52's direction to "find the facts specially and state separately . . . conclusions of law thereon." While the standard of law in this area is not a complex one, we four think the unelaborated finding of ultimate fact here cannot stand as a fulfillment of these requirements. It affords the reviewing court not the semblance of an indication of the legal standard with which the trier of fact has approached his task. For all that appears, the Dis-

---

[14] The "Findings of Fact and Conclusions of Law" were made orally, and were simply: "The resolution of the Board of Directors of the Trinity Operating Company, Incorporated, held November 19, 1942, after the resignations had been accepted of the plaintiff from his positions as controller of the corporation of the Trinity Church, and the president of the Trinity Operating Company, Incorporated, whereby a gratuity was voted to the plaintiff, Allen [*sic*] D. Stanton, in the amount of $20,000 payable to him in monthly installments of $2,000 each, commencing with the month of December, 1942, constituted a gift to the taxpayer, and therefore need not have been reported by him as income for the taxable years 1942, or 1943."

trict Court may have viewed the form of the resolution or the simple absence of legal consideration as conclusive. While the judgment of the Court of Appeals cannot stand, the four of us think there must be further proceedings in the District Court looking toward new and adequate findings of fact. In this, we are joined by MR. JUSTICE WHITTAKER, who agrees that the findings were inadequate, although he does not concur generally in this opinion.

Accordingly, in No. 376, the judgment of this Court is that the judgment of the Court of Appeals is reversed, and in No. 546, that the judgment of the Court of Appeals is vacated, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE HARLAN concurs in the result in No. 376. In No. 546, he would affirm the judgment of the Court of Appeals for the reasons stated by MR. JUSTICE FRANKFURTER.

MR. JUSTICE WHITTAKER, agreeing with *Bogardus* that whether a particular transfer is or is not a "gift" may involve "a mixed question of law and fact," 302 U. S., at 39, concurs only in the result of this opinion.

MR. JUSTICE DOUGLAS dissents, since he is of the view that in each of these two cases there was a gift under the test which the Court fashioned nearly a quarter of a century ago in *Bogardus* v. *Commissioner,* 302 U. S. 34.

MR. JUSTICE BLACK, concurring and dissenting.

I agree with the Court that it was not clearly erroneous for the Tax Court to find as it did in No. 376 that the automobile transfer to Duberstein was not a gift, and so

I agree with the Court's opinion and judgment reversing the judgment of the Court of Appeals in that case.

I dissent in No. 546, *Stanton* v. *United States.* The District Court found that the $20,000 transferred to Mr. Stanton by his former employer at the end of ten years' service was a gift and therefore exempt from taxation under I. R. C. of 1939, § 22 (b)(3) (now I. R. C. of 1954, § 102 (a)). I think the finding was not clearly erroneous and that the Court of Appeals was therefore wrong in reversing the District Court's judgment. While conflicting inferences might have been drawn, there was evidence to show that Mr. Stanton's long services had been satisfactory, that he was well liked personally and had given splendid service, that the employer was under no obligation at all to pay any added compensation, but made the $20,000 payment because prompted by a genuine desire to make him a "gift," to award him a "gratuity." Cf. *Commissioner* v. *LoBue,* 351 U. S. 243, 246–247. The District Court's finding was that the added payment "constituted a gift to the taxpayer, and therefore need not have been reported by him as income . . . ." The trial court might have used more words, or discussed the facts set out above in more detail, but I doubt if this would have made its crucial, adequately supported finding any clearer. For this reason I would reinstate the District Court's judgment for petitioner.

MR. JUSTICE FRANKFURTER, concurring in the judgment in No. 376 and dissenting in No. 546.

As the Court's opinion indicates, we brought these two cases here partly because of a claimed difference in the approaches between two Courts of Appeals but primarily on the Government's urging that, in the interest of the better administration of the income tax laws, clarification was desirable for determining when a transfer of property constitutes a "gift" and is not to be included in

income for purposes of ascertaining the "gross income" under the Internal Revenue Code. As soon as this problem emerged after the imposition of the first income tax authorized by the Sixteenth Amendment, it became evident that its inherent difficulties and subtleties would not easily yield to the formulation of a general rule or test sufficiently definite to confine within narrow limits the area of judgment in applying it. While at its core the tax conception of a gift no doubt reflected the non-legal, non-technical notion of a benefaction unentangled with any aspect of worldly requital, the divers blends of personal and pecuniary relationships in our industrial society inevitably presented niceties for adjudication which could not be put to rest by any kind of general formulation.

Despite acute arguments at the bar and a most thorough re-examination of the problem on a full canvass of our prior decisions and an attempted fresh analysis of the nature of the problem, the Court has rejected the invitation of the Government to fashion anything like a litmus paper test for determining what is excludable as a "gift" from gross income. Nor has the Court attempted a clarification of the particular aspects of the problem presented by these two cases, namely, payment by an employer to an employee upon the termination of the employment relation and non-obligatory payment for services rendered in the course of a business relationship. While I agree that experience has shown the futility of attempting to define, by language so circumscribing as to make it easily applicable, what constitutes a gift for every situation where the problem may arise, I do think that greater explicitness is possible in isolating and emphasizing factors which militate against a gift in particular situations.

Thus, regarding the two frequently recurring situations involved in these cases—things of value given to employees by their employers upon the termination of em-

ployment and payments entangled in a business relation and occasioned by the performance of some service—the strong implication is that the payment is of a business nature. The problem in these two cases is entirely different from the problem in a case where a payment is made from one member of a family to another, where the implications are directly otherwise. No single general formulation appropriately deals with both types of cases, although both involve the question whether the payment was a "gift." While we should normally suppose that a payment from father to son was a gift, unless the contrary is shown, in the two situations now before us the business implications are so forceful that I would apply a presumptive rule placing the burden upon the beneficiary to prove the payment wholly unrelated to his services to the enterprise. The Court, however, has declined so to analyze the problem and has concluded "that the governing principles are necessarily general and have already been spelled out in the opinions of this Court, and that the problem is one which, under the present statutory framework, does not lend itself to any more definitive statement that would produce a talisman for the solution of concrete cases."

The Court has made only one authoritative addition to the previous course of our decisions. Recognizing *Bogardus* v. *Commissioner,* 302 U. S. 34, as "the leading case here" and finding essential accord between the Court's opinion and the dissent in that case, the Court has drawn from the dissent in *Bogardus* for infusion into what will now be a controlling qualification, recognition that it is "for the triers of the facts to seek among competing aims or motives the ones that dominated conduct." 302 U. S. 34, 45 (dissenting opinion). All this being so in view of the Court, it seems to me desirable not to try to improve what has "already been spelled out" in the opinions of this Court but to leave to the lower courts

the application of old phrases rather than to float new ones and thereby inevitably produce a new volume of exegesis on the new phrases.

Especially do I believe this when fact-finding tribunals are directed by the Court to rely upon their "experience with the mainsprings of human conduct" and on their "informed experience with human affairs" in appraising the totality of the facts of each case. Varying conceptions regarding the "mainsprings of human conduct" are derived from a variety of experiences or assumptions about the nature of man, and "experience with human affairs," is not only diverse but also often drastically conflicting. What the Court now does sets fact-finding bodies to sail on an illimitable ocean of individual beliefs and experiences. This can hardly fail to invite, if indeed not encourage, too individualized diversities in the administration of the income tax law. I am afraid that by these new phrasings the practicalities of tax administration, which should be as uniform as is possible in so vast a country as ours, will be embarrassed. By applying what has already been spelled out in the opinions of this Court, I agree with the Court in reversing the judgment in *Commissioner* v. *Duberstein*.

But I would affirm the decision of the Court of Appeals for the Second Circuit in *Stanton* v. *United States*. I would do so on the basis of the opinion of Judge Hand and more particularly because the very terms of the resolution by which the $20,000 was awarded to Stanton indicated that it was not a "gratuity" in the sense of sheer benevolence but in the nature of a generous lagniappe, something extra thrown in for services received though not legally nor morally required to be given. This careful resolution, doubtless drawn by a lawyer and adopted by some hardheaded businessmen, contained a proviso that Stanton should abandon all rights to "pension and retirement benefits." The fact that Stanton had no such

claims does not lessen the significance of the clause as something "to make assurance doubly sure." 268 F. 2d 728. The business nature of the payment is confirmed by the words of the resolution, explaining the "gratuity" as "in appreciation of the services rendered by Mr. Stanton as Manager of the Estate and Comptroller of the Corporation of Trinity Church throughout nearly ten years, and as President of Trinity Operating Company, Inc." The force of this document, in light of all the factors to which Judge Hand adverted in his opinion, was not in the least diminished by testimony at the trial. Thus the taxpayer has totally failed to sustain the burden I would place upon him to establish that the payment to him was wholly attributable to generosity unrelated to his performance of his secular business functions as an officer of the corporation of the Trinity Church of New York and the Trinity Operating Co. Since the record totally fails to establish taxpayer's claim, I see no need of specific findings by the trial judge.