Ronald **WOODY** and Shirley Woody,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 20824.

United States Court of Appeals
Ninth Circuit.

Nov. 10, 1966.

Bernard, Shevach, Bonyhadi & Hall,
Portland, Or., for appellants.

Richard C. Pugh, Acting Asst. Atty.
Gen., Meyer Rothwacks, Melva M. Gra-
ney, Fred E. Youngman, Attys., Dept. of
Justice, Washington, D. C., Sidney I.
Lezar, U. S. Atty., Portland, Or., for
appellee.

Before BARNES, CECIL*, and JERT-BERG, Circuit Judges.

JERTBERG, Circuit Judge:

. This is an appeal from the judgment of the District Court dismissing appellant's claim for tax refund pursuant to the jury's response to special interrogatories regarding whether strike benefits received by appellant were gift or income for income tax purposes. We hold that the jury instructions were correct and that the evidence is sufficient to support the jury's finding that the benefits were not gifts. We therefore affirm the dismissal.

Taxpayer Ronald Woody, appellant herein, and wife, both residents of Oregon, filed a joint income tax return for the year 1960.[1] In that return, Woody reported as non-taxable gifts the strike benefits totaling $5,286.00 which he had received during 1960. The Commissioner determined that these benefits were properly taxable as income and asserted a deficiency of $736.84. Appellant paid the disputed tax with interest on July 30, 1963, and November 1, 1963. A timely claim for refund of the tax was filed on November 1, 1963, and rejected on February 18, 1964. The present action was filed in the Federal District Court for the District of Oregon on November 24, 1964.

At all times relevant to this case, appellant was a member of Stereotypers and Electrotypers' International Union, Local No. 48, hereinafter referred to as Local 48. Appellant was a journeyman stereotyper employed by the Journal Publishing Company of Portland, Oregon, publishers of a newspaper known as the "Journal." In 1959, there arose a labor dispute between the Union and the two daily Portland, Oregon newspapers, the "Journal" and the "Oregonian." When negotiations broke down, the members of Local 48 voted to go out on strike. The strike was duly authorized by the Local Union and the International Union on November 3, 1959. Appellant voted in favor of the strike. The strike commenced on November 10, 1959, and affected about 600 employees of the two newspapers.

During the strike, benefits were paid to the strikers through Local 48. Article XII, Sec. 14 of the Constitution of the International Union required the International's Executive Board to pay to the Local Union during the first eight weeks of an authorized strike an amount totaling $70 per week for each journeyman on strike and $47.50 per week for each apprentice on strike. After the initial eight-week period, such payments could be continued or terminated at the discretion of the Board. The Board made the required payments, which extended into the early part of 1960, and thereafter, the payments were continued as an exercise of the Board's discretion.

Two other sources contributed to the strike fund from which Local 48 paid its strike benefits. The Pacific Slope Conference Mutual Aid Pact, otherwise known as the Pacific Slope Conference, a regional grouping of local unions in the Western States, organized primarily to provide a pool of funds for strikes and other emergencies, contributed a maximum of $15 per week for each striking journeyman, and $7.50 per week for each striking apprentice. In addition, contributions from other unions and individuals totaled a maximum of $15 per journeyman and $30 per apprentice. Thus, the total strike benefits from the three sources were $100 per week for each journeyman and $85 per week for each apprentice.

The pre-strike annual gross earnings of a journeyman were $6,569.20. The same pre-strike earnings for an apprentice were a minimum of $3,284.60 and a maximum of $5,912.28, depending on the number of years served.

Recipients of the strike benefits totaled as many as 56 during 1960. But the number decreased as the strike wore on. In June, 1962, the International Union

---

* Lester L. Cecil, 6 CA, sitting by designation.

1. Mrs. Woody is a party to this lawsuit for this reason only.

and the Pacific Slope Conference terminated their contributions indefinitely. Local 48 continued its payments until 1963, when the International and Pacific Conference resumed theirs. But by November, 1964, all strike benefit payments from any source had ceased.

To be eligible for these benefits, appellant had to do no more than be and remain on strike. He was required only to be a union member in good standing and to sign in daily at Strike Headquarters. He was not required to picket or solicit cancellation of subscriptions to the struck newspapers, although he did do this on a voluntary basis. If a striking union member secured other employment, his strike benefit pay was reduced one-fifth for each day he was otherwise employed, and anyone doing four days' work in any single week received no strike benefits for that week, in accordance with the provisions of Article XII, Sec. 14A of the International Constitution and Article IV, Sec. 2 of the Pacific Slope Conference Mutual Aid Pact. There is no indication in the record whether appellant ever received such casual employment, although he did look for work.

At no time during the strike did appellant apply for welfare or relief assistance from state or local agencies. As a striker, he was ineligible for welfare under the policies established by these agencies. He and his fellow strikers were also denied unemployment compensation.

Trial was had before a judge and jury. At the close of the evidence, the case was submitted to the jury on special interrogatories, three in number, each dealing with the payments received through Local 48 from one of the three sources: the International, the Conference, and other unions and individuals. The interrogatories were as follows:

"I.

"Were the $70.00 per week payments contributed to plaintiffs, through Local No. 48, by the International Union, gifts, as that word has been defined to you?

\*　　\*　　\*　　\*　　\*　　\*

"II.

"Were the $15.00 per week payments contributed to plaintiffs, through Local No. 48, by Pacific Slope Conference, gifts, as that word has been defined to you?

\*　　\*　　\*　　\*　　\*　　\*

"III.

"Were the $15.00 per week payments contributed to plaintiffs, through Local No. 48, by other contributing unions and individuals, gifts, as that word has been defined to you?

\*　　\*　　\*　　\*　　\*　　\*"

The jury replied in the negative to the first two interrogatories and answered "No Verdict" on the third. On the basis of these replies, the District Judge dismissed appellant's refund claim pertaining to the sources in the first two interrogatories. As to the claim based on the third source, a mistrial was declared and the claim dismissed, without prejudice to appellant's right to file a motion to reinstate the claim. On this appeal, the appellant is not questioning the trial court's disposition of such claim.

■ The question of whether a monetary payment is a gift and therefore nontaxable for income tax purposes is basically an issue of fact. "But the question here remains basically one of fact for determination on a case-by-case basis." Commissioner v. Duberstein, 363 U.S. 278, 290, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960). In *Duberstein*, the Court made quite plain, after a full airing of the difficulties involved, that this issue was to be committed to the trier of fact.

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm

us in our conclusions that primary weight in this area must be given to the conclusions of the trier of fact." 363 U.S. at 289, 80 S.Ct. at 1198.

■ Accordingly, this court is confined to the normal strictures of appellate review of the fact-finder's determinations. "Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue." Commissioner v. Duberstein, supra, at 290-291, 80 S.Ct. at 1199.

These principles were applied by the Court in a case handed down the same day as *Duberstein*, involving strike benefits paid by a union to a striking nonmember. In that case, the jury had determined that the benefits, in the form of redeemable food vouchers and payment of the non-member's room rent, were gifts. United States v. Kaiser, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960). The Court carefully limited its review to a determination of whether the jury's verdict had reasonable support in the record.

"We need not stop to speculate as to what conclusion we would have drawn had we sat in the jury box rather than those who did. The question is one of the allocation of power to decide the question; and once we say that such conclusions could with reason be reached on the evidence, and that the District Court's instructions are not overthrown, our reviewing authority is exhausted, and we must recognize that the jury was empowered to render the verdict which it did." 363 U.S. at 304–305, 80 S.Ct. at 1207.

■ On our review of the record in this case, we are of the opinion that there is sufficient evidence to support the jury's negative answers to the interrogatories. Perhaps the strongest, though of course not conclusive, support is the fact that the union made no inquiry into the personal financial situations and needs of its individual striking members. As ap-

pellant points out, the union's officers may well have been aware of financial hardship in appellant's case. But this awareness was not determinative of the amount appellant received as strike benefits. One of the "Admitted Facts" in the Pretrial Order makes this clear:

"The amount of the strike benefit depended on the classification of the particular member as a journeyman, probationary journeyman or apprentice. The amount of the strike benefit was not affected by his marital status, number of dependents or financial condition. There was no obligation to submit a questionnaire relating to actual need of the recipient."

Analogies to or distinctions from the factual situation in *Kaiser* are not helpful. The facts of that case were not determinative of the issue before the Supreme Court, contrary to appellant's suggestion. That Court had decisively rejected the invitation to find gift or income as a matter of law on the facts of that case. The Court in *Kaiser* was reviewing the evidence only to determine whether it was sufficient to support the outcome, not whether it compelled the outcome. Therefore, we are not bound by the facts in *Kaiser* except insofar as the issue raised by the facts in both cases confines our review to the sufficiency of the evidence.

■ Whether job classification was the sole criteria for determining the amount of the benefit is beyond the scope of our inquiry. We cannot know the grounds on which the jury ultimately based its findings. It is enough for an appellate court that a reasonable basis exists in the record for the finding. The same may be said of the dispute in this case over the motives of the donors of the strike benefits. The evidence provided reasonable grounds for several motives. But it is not for us to say that one motive is more reasonably supported than another, so long as the "non-gift" motivation inferred by the jury has reasonable support.

"It was for the triers of the facts to seek among competing aims or motives the ones that dominated conduct. Perhaps, if such a function had been ours, we would have drawn the inference favoring a gift. That is not enough. If there was opportunity for opposing inferences, the judgment of the Board [i. e. Tax Court, acting as fact-finder in this case] controls." Bogardus v. Commissioner, 302 U.S. 34, 45, 58 S.Ct. 61, 66, 82 L.Ed. 32 (1937) (dissenting opinion).[2]

The jury could reasonably infer that these payments were not gifts because the amount was not determined according to personal financial need; rather, it depended upon the type of job and the number of years of service.

■■ The only question remaining, then, for our determination is whether the instructions to the jury were proper in this case. Appellant objects to three of the court's instructions. The first to which he objects is as follows:

"In determining whether the strike benefit payments to Mr. Woody were made as a charity, you should consider the amount of the assistance given, the form of the assistance, and whether the organization or persons making the payments made any investigation of the personal needs of the striking members before making the payments, and whether the plaintiff's participation in strike activities was purely voluntary."

Appellant objects that the following correlative requested instruction, which was refused, should have been given instead:

"In determining whether the strike benefits paid to the taxpayer Ronald Woody were gifts within the meaning of Section 102(a) of the Internal Revenue Code of 1954 and hence not includible in his income, you must consider all of the circumstances present, and specifically you should take into account such factors as the form and amount of the benefits to the Woodys, the conditions of personal need of the Woodys, the lack of other sources of income to the Woodys, and the availability or unavailability of public assistance."

We think the court's instruction conforms substantially with those factors enumerated in *Kaiser* as appropriate factors for jury consideration:

"They had the power to conclude, on the record, taking into account such factors as the form and amount of the assistance and the conditions of personal need, of lack of other sources of income, compensation, or public assistance, and of dependency status, which surrounded the program under which it was rendered, that while the assistance was furnished only to strikers, it was not a recompense for striking." 363 U.S. at 304, 80 S.Ct. at 1207.

Furthermore, the court's instruction puts the emphasis on the acts and intention of the donor, where it properly belongs. This the requested instruction fails to do, emphasizing instead the factors only from the donee's point of view. Yet "the most critical consideration * * * is the *transferor's* 'intention'." (emphasis added) Commissioner v. Duberstein, supra, 363 U.S. at 285–286, 80 S.Ct. at 1197.

■ The second instruction to which appellant objects is as follows:

"If you find that the payments were made as a form of compensation in order to enable and encourage the plaintiff Mr. Woody and others on strike to continue the strike, then you cannot find that the payments were gifts."

This instruction also focuses on the intention of the donor. It properly injects the element from *Kaiser* of whether the payments were "a recompense for striking." 363 U.S. at 304, 80 S.Ct. 1204. Moreover, it is in conformity with a recent decision of the Tax Court, in which

---

2. This aspect of the dissent in *Bogardus* was cited with approval by the Court in *Duberstein*, 363 U.S. at 289, fn. 11, 80 S.Ct. 1190. See also 363 U.S. at 296, 80 S.Ct. 1190.

the judge, sitting as a trier of fact, stated:

" * * * we are convinced that the motivating force behind the payments here involved proceeded from the anticipation of economic benefit both to the local guild and to the petitioner. [citation omitted] Through the force and power of a strike the local guild intended to benefit its members by securing additional job security. Strike benefits were paid to members of the local guild, including petitioner, to enable them to continue with the strike so that the aims of the [American Newspaper Guild] could be accomplished. In our opinion, this does not amount to a gift." John N. Hagar, 43 T.C. 468, 485 (1965).

The third instruction to which appellant objects is as follows:

"The fact that either the union or its members might regard the payments as gifts is not in and of itself determinative. The expectations or the hopes of Mr. Woody, the union or its members as to the income tax consequences or treatment of the payments have nothing to do with whether the payments were gifts."

This instruction was fully in accord with the law. While the intent of the donor, rather than the donee, is the important factor, the label which the donor attaches to his payment is not conclusive. The Court makes this clear in *Duberstein:*

"Moreover, the *Bogardus* case itself makes it plain that the donor's characterization of his action is not determinative—that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S., at 40 [58 S.Ct. at page 64]. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter." 363 U.S. at 286, 80 S.Ct. at 1197.

The instruction on this matter was proper.

The judgment of the District Court must be and is affirmed.