RUDOLPH C. STONE AND AUDREY L. STONE v. MARK G. LYNCH, SECRETARY OF THE DEPARTMENT OF REVENUE

No. 340PA84

(Filed 30 January 1985)

**Taxation § 28— union strike benefits—gift rather than income**

   Union strike benefits constituted a gift to the recipient under North Carolina income taxation law and were thus properly excludable from the recipient's taxable income where the union assistance was voluntary and without consideration. G.S. 105-141(b)(3).

   Justice VAUGHN did not participate in the consideration or the decision of this case.

   Justice MEYER dissenting.

   Chief Justice BRANCH joins in this dissent.

ON discretionary review of a decision of the Court of Appeals reported at 68 N.C. App. 441, 315 S.E. 2d 350 (1984), reversing judgment filed by *Farmer, J.*, 20 December 1982. Heard in the Supreme Court 12 December 1984.

The state is seeking to tax as income certain payments made by the Communications Workers of America (CWA), a labor union representing employees in the communications industry, to Rudolph Stone, a plaintiff herein. During 1979 Mr. Stone was employed by Carolina Telephone and Telegraph Company (CTT). In February 1979, CWA organized Local 3685, with members at the CTT plant in Manteo at which Mr. Stone worked. Mr. Stone joined the union in early September 1979, although he paid no dues until sometime after 29 November 1979. On 30 September 1979 the union voted to strike CTT. Mr. Stone participated in the strike by picketing and serving as a strike counsellor for the union. The strike ended 29 November 1979, at which time Mr. Stone returned to work.

During the strike the union established the CWA Local 3685 Defense Fund to reimburse members of the union for direct expenses incurred in connection with the strike and to make assistance payments to strikers. Individuals seeking assistance payments were required to complete an application form in which they had to set forth, inter alia, the extent of their financial assets and obligations and the specific items for which assistance

was requested. On the basis of the information set forth on the application the union determined the extent of the applicant's need for assistance. Defense Fund rules provided that assistance was available for shelter, utilities, and fuel if necessary to prevent eviction, foreclosure, or utility service termination where deferral of payments could not be arranged. Assistance was also available after the first sixty days of a strike to prevent repossession of furniture, household appliances, and automobiles in the event that deferral of payments could not be arranged. Assistance was not available and was denied for payments on luxury items such as color televisions and stereo sets. Assistance was available for food and for payment of certain medical expenses.

After the strike began Mr. Stone applied to the Defense Fund for strike benefits to pay a number of bills. Over several weeks he received funds for groceries, utilities and telephone, medical expenses, mortgage payments, and loan payments. The total sum Mr. Stone received was $1,879.95.

In filling out his 1979 North Carolina income tax return, Mr. Stone reported the $1,879.95 as nontaxable income. The North Carolina Department of Revenue subsequently sent Mr. Stone an adjustment statement notifying him that the Department considered the $1,879.95 to be taxable income. Mr. Stone paid tax, a penalty, and interest on the sum and then timely filed for a refund, claiming that the $1,879.95 of strike benefits was not taxable income. When the ensuing dispute was not resolved administratively, Mr. and Mrs. Stone began this litigation to recover the tax and interest paid on the strike benefits. The trial court concluded that the strike benefits Mr. Stone received were includable in his gross income pursuant to N.C.G.S. 105-141(a). The Court of Appeals reversed, holding that the benefits had been gifts from the union to Mr. Stone and thus were exempt from income taxation under N.C.G.S. 105-141(b)(3). This Court granted the Secretary of the Department of Revenue's petition for discretionary review 28 August 1984.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by J. David James, for plaintiff appellees.*

*Rufus L. Edmisten, Attorney General, by Myron C. Banks, Special Deputy Attorney General, for defendant appellant.*

MARTIN, Justice.

The question dispositive of this appeal is whether the strike benefits Mr. Stone received were gifts under N.C.G.S. 105-141 (b)(3). This statute provides in part:

> (b) The words "gross income" do not include the follow-ing items, which shall be exempt from taxation under this Division, but shall be reported in such form and manner as may be prescribed by the Secretary of Revenue:
>
> . . . .
>
> (3) The value of property acquired by gift, bequest, de-vise or descent . . . .

We find no definition of "gift" in either the income taxation Arti-cle or the gift taxation statute, N.C.G.S. 105-188. The only reported case citing N.C.G.S. 105-141(b)(3) to date is *Manufactur-ing Co. v. Johnson, Comr. of Revenue*, 261 N.C. 504, 135 S.E. 2d 205 (1964). This case concerned whether the forgiveness of debt owed by a corporation to an officer/stockholder constituted in-come to the corporation or a contribution to its capital. In discuss-ing the transfer of property from a stockholder to a corporation, this Court stated:

> The value of property acquired by gift is excluded from both State and Federal income tax. G.S. 105-141(b)(3); Int. Rev. Code of 1954 § 102. A gift is usually defined as a vol-untary transfer of property by one to another without any consideration therefor. Theoretically, a contribution by a stockholder increases the resources of the corporation and the value of all the stock, including his own, proportionately. This business aspect removes such a transaction from the concept of a pure gift. However, such a gift to a corporation necessarily constitutes a gift to the other stockholders.
>
> In *American Dental Co.* [318 U.S. 322, 87 L.Ed. 785], the Supreme Court held that the gratuitous release by creditors of accrued rent and interest on merchandise purchased con-stituted a gift to the corporation which was not subject to in-come tax. The court said: "The fact that the motives leading to the cancellation were those of business or even selfish, if it be true, is not significant. The forgiveness was gratuitous, a

release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute." (Section 22(b)(3) of the Revenue Code of 1939). The creditor-donors in *American Dental Co.* were not stockholders. When a creditor who is a stranger to the corporation forgives its debt to him, the forgiveness is exempt from income tax under the exclusion of gifts. When a stockholder gratuitously cancels the debt the corporation owes him, the transaction is denominated a contribution to capital. *See George Hall Corp. v. Commissioner,* 2 T. Ct. 146; *Pacific Magnesium, Inc. v. Westover,* 86 F. Supp. 644, 649 (S.D. Cal. 1949). Subject to Int. Rev. Code of 1954, § 1017, the tax result is the same. However, neither constitutes income under state or federal law.

We hold that the forgiveness of the debt in question constituted a contribution to the capital of the plaintiff corporation and was therefore not taxable income.

*Id.* at 507, 135 S.E. 2d at 208.

The definition of "gift" stated in *Manufacturing Co.* is broader than the definition used for federal income taxation purposes which was first enunciated in *Commissioner v. Duberstein,* 363 U.S. 278, 4 L.Ed. 2d 1218 (1960). Under *Duberstein,* if a transfer "proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature . . ., it is not a gift. . . . A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity' . . . 'out of affection, respect, admiration, charity or like impulses.'" *Id.* at 285, 4 L.Ed. 2d at 1225 (citations omitted). By quoting and relying on *Helvering v. Amer. Dental Co.,* 318 U.S. 322, 87 L.Ed. 785 (1943), and its similarly broad characterization of gift for income tax purposes, in *Manufacturing Co. v. Johnson, Comr. of Revenue,* 261 N.C. 504, 135 S.E. 2d 205, this Court tacitly rejected the *Duberstein* definition of gift. *Manufacturing Co.* is strong precedent to apply the common law definition of gift for income taxation purposes. An analysis of the facts in the instant case compels the holding that the strike benefits paid to Mr. Stone were gifts under our income taxation law.

As stated in *Manufacturing Co.*, a gift is a "voluntary transfer of property by one to another without any consideration therefor." Thus, there must be a transfer, the transfer must be voluntary, and the transfer must be without consideration. There is no question in this case that there were transfers. Money passed from the Defense Fund to Mr. Stone on numerous occasions. The money was not loaned but was transferred to Mr. Stone permanently and absolutely. There is no evidence that the union was in any way coerced into making the payments, nor does anything in the record lead to any conclusion other than that the union made the payments voluntarily. The remaining question, therefore, is whether the union's payment of strike benefits to Mr. Stone was without consideration.

The record is clear that the union did not demand or require that Mr. Stone perform any services for it in order to be eligible to receive strike benefits. He did not perform any services for the union prior to the inception of the strike. Not all strikers received benefits. Assuming that the trial court's findings of fact that "Union assistance was based [merely] on moral obligation" and "plaintiff was morally obligated to perform strike duties" are adequately supported by evidence of record, the trial court's conclusion that the benefits are taxable is erroneous. As the Court of Appeals aptly stated:

> It is firmly settled . . . that except in cases of consanguinity or similar relationship, or when there is some antecedent debt or legal obligation, a moral obligation alone does not constitute consideration. *See Carolina Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964); *Cruthis v. Steele*, 259 N.C. 701, 131 S.E. 2d 344 (1963); *Exum v. Lynch*, 188 N.C. 392, 125 S.E. 15 (1924); *see also* Restatement (Second) of Contracts §§ 71-73 (1981); 17 C.J.S. *Contracts* § 90 (1963); 38 C.J.S. *Gifts* § 7 (1943); 17 Am. Jur. 2d *Contracts* §§ 130-133 (1964); 38 Am. Jur. 2d *Gifts* §§ 1-2 (1968).

68 N.C. App. at 446, 315 S.E. 2d at 354. We further agree with the Court of Appeals that the record in the instant case reveals no special relationship between the union and Mr. Stone, nor is there any evidence that Mr. Stone was party to any antecedent obligation or agreement with the union which would cause the moral

obligation to constitute legal consideration. Because the voluntary transfers of strike benefits from the union to Mr. Stone were made without consideration, they were gifts and therefore excludable from plaintiffs' taxable income pursuant to N.C.G.S. 105-141(b)(3).

Although our holding rests on state law, we find it in accord with the federal law as expressed in *United States v. Kaiser*, 363 U.S. 299, 4 L.Ed. 2d 1233 (1960). The strike benefits in the present case would also be considered gifts under the *Kaiser* decision. *Kaiser* was concerned with the question whether strike benefits were gifts under 26 U.S.C. § 102(a). In *Kaiser* a plurality of the Court held that whether strike benefits constituted a gift under the definition set forth in *Duberstein*, 363 U.S. 278, 4 L.Ed. 2d 1218 (heard with *Kaiser*), was a question of fact for the fact finder. The Court held that in Mr. Kaiser's case the jury appropriately found that strike benefits had been a gift:

> [The jury] had the power to conclude, on the record, taking into account such factors as the form and amount of the assistance and the conditions of personal need, of lack of other sources of income, compensation, or public assistance, and of dependency status, which surrounded the program under which it was rendered, that while the assistance was furnished only to strikers, it was not a recompense for striking. They could have concluded that the very general language of the Union's constitution, when considered with the nature of the Union as an entity and with the factors to which we have just referred, did not indicate that basically the assistance proceeded from any constraint of moral or legal obligation, of a nature that would preclude it from being a gift. And on all these circumstances, the jury could have concluded that assistance, rendered as it was to a class of persons in the community in economic need, proceeded primarily from generosity or charity, rather than from the incentive of anticipated economic benefit. We can hardly say that, as a matter of law, the fact that these transfers were made to one having a sympathetic interest with the giver prevents them from being a gift. This is present in many cases of the most unquestionable charity.

363 U.S. at 304, 4 L.Ed. 2d at 1236. Such factors were also present in the instant case, and thus under *Kaiser* the benefits Mr. Stone received would also be considered gifts.

Because the strike benefits in the instant case are gifts under our interpretation of both state and federal law, we do not reach the question of whether principles of federal taxation law must or must not be followed when a state taxation statute is identical or substantially similar to a federal taxation statute. We note, however, that generally it is preferable that state taxation statutes be interpreted consistently with their federal counterparts. *See, e.g., Ward v. Clayton, Comr. of Revenue*, 276 N.C. 411, 172 S.E. 2d 531 (1970); N.C. Gen. Stat. §§ 105-141(b)(9), (10), (17), (19), (23), -144(b), -145(e), -147(8), (16), (20) (Supp. 1983). This is especially important when the statute involved is one of technical taxation law or procedure not involving a common law issue, such as presented in this appeal.

Plaintiffs also seek to raise the issues of whether taxation of strike benefits by the State of North Carolina violates the supremacy clause of the Constitution of the United States and whether such taxation is preempted by federal labor legislation. As these issues were neither raised nor decided by the trial court, they are not properly before this Court for review. *E.g., Wilcox v. Highway Comm.*, 279 N.C. 185, 181 S.E. 2d 435 (1971).

The decision of the Court of Appeals is

Affirmed.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

Believing that the strike benefits paid to Mr. Stone under the facts of this case do not constitute a "gift," I respectfully dissent. I am convinced that the strike benefits paid here are taxable income under both state and federal law. The trial court correctly concluded from the evidence that the payments to Mr. Stone were *not* gifts, and were therefore taxable income.

G.S. § 105-141(a) defines "gross income" as "all income in whatever form and from whatever source derived." "Net income"

is "gross income less deductions" N.C.G.S. § 105-140, and the individual income tax is imposed upon the basis of "net income." N.C.G.S. § 105-136. "Gross income" is so potentially broad and all-inclusive a term that the legislature has seen fit to expressly remove many items from its reach which otherwise would be encompassed by it. N.C.G.S. § 105-141(b) provides that "the words 'gross income' do not include the following items: . . . (3) the value of property acquired by gift. . . ."

N.C.G.S. § 105-141(b)(3) did not spring from our General Assembly full-grown and unrelated to anything that had occurred before. The language first appeared in the North Carolina income tax laws in 1921, when Section 301 of the Revenue Act was enacted, as one of the exemptions listed in Section 301. 1921 N.C. Sess. Laws Ch. 34, § 301. Subparagraph 2 thereof provided that "the words 'gross income' do not include . . . (c) the value of property acquired by gift. . . ." The source of this language is the federal income tax law of 1913, 28 Stat. (Part 1) 167 (1913), which finds its current expression in 26 U.S.C. § 102(a), providing that "gross income does not include the value of property acquired by gift. . . ."

Thus we have an identical exclusion of "gifts" from gross income under both federal and state income tax law; the state law obviously having been drawn from the earlier federal law. This being so, it stands to reason that determination of what constitutes a "gift" under such laws ought, as a matter of common sense, to follow identical tracks for the sake of simplicity, ease of administration, and fairness to taxpayers and tax practitioners who must, in cases of divergence, keep track of separate results from separate tax systems.

I believe it is extremely important that our state taxation statutes be interpreted in a manner which is consistent with their federal counterparts. While paying lip service to this principle, the majority has gone far out of its way to avoid following it here. The majority reaches an erroneous and unwise result, first through the misinterpretation of the North Carolina case of *Manufacturing Co. v. Johnson, Comr. of Revenue*, 261 N.C. 504, 135 S.E. 2d 205 (1964) and then by misinterpreting the holding of the United States Supreme Court in *United States v. Kaiser*, 363 U.S. 299, 4 L.Ed. 2d 1233 (1960).

In my opinion, the majority has completely misinterpreted the holding in *Manufacturing Co.* As indicated in the majority opinion, *Manufacturing* involved the forgiveness of a debt owed by a corporation to an officer/stockholder. The officer/stockholder forgave the debt and the court held that the forgiveness of the debt was a *contribution to capital.* The language of the court in that regard is as follows:

> Theoretically, a contribution by a stockholder increases the resources of the corporation and the value of all the stock, including his own, proportionately. This business aspect removes such a transaction from the concept of a pure gift.

> When a creditor who is a stranger to the corporation forgives its debt to him the forgiveness is exempt from income tax under the exclusion of gifts. When a stockholder gratuitously cancels the debt the corporation owed him, the transaction is denominated a contribution to capital.

> We hold that the forgiveness of the debt in question constituted a contribution to the capital of the plaintiff corporation and was therefore not taxable income.

*Id.* at 507, 135 S.E. 2d at 208.

Thus it is clear that although the court said that neither a gift nor a contribution to income is considered taxable income, *Manufacturing Co.* did not hold that the forgiveness of the debt was a "gift." My point is that it is not reasonable to apply the definition of "gift" from *Manufacturing Co.* to all situations, and in particular the situation presented by the case now before us. Under our statute, N.C.G.S. § 105-141(b)(3), it is necessary that the benefits actually constitute a "gift."

When, as here, we have no appropriate State precedent, we should look to the federal decisions for a definition of the term "gift." In *Commissioner v. Duberstein*, 363 U.S. 278, 4 L.Ed. 2d 1218 (1960), the United States Supreme Court was called upon to determine the meaning of "gift" in the context of the federal income tax statute which is nearly identical to G.S. § 105-141(a) and (b). The Court stated:

> The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in

a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefore, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that *the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. . . . And, importantly, if the payment proceeds primarily from "the constraining force of any legal or moral duty," or from "the incentive of anticipated benefit" of an economic nature . . . it is not a gift.* And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." . . . . A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," . . . "out of affection, respect, admiration, charity or like impulses. . . ." (Citations omitted.) (Emphasis added.)

*Id.* at 285, 4 L.Ed. 2d at 1224-25.

The majority errs in concluding that *Manufacturing Co.* "tacitly rejected the *Duberstein* definition of a gift."

I also believe that the majority has misconstrued the holding in *United States v. Kaiser*, 363 U.S. 299, 4 L.Ed. 2d 1233. Nevertheless, that very case upon which the majority relies (*Kaiser*) cites *Duberstein* with approval. *Duberstein* and *Kaiser* both make it clear that whether a transaction amounts to a "gift" in the context of taxation statutes is essentially a question of fact to be determined by the trier of fact. The burden of proving "gift" is upon the party claiming it. If that party fails in its burden the transaction is presumed taxable and the assessment is presumed correct. This case was tried on the facts and the trial judge made appropriate findings of fact fully supported by the evidence and made conclusions of law fully supported by the findings of fact. The process resulted in a judgment favorable to the Secretary of Revenue.

The Court in *Kaiser* held that the evidence in that case was sufficient *to permit* (but not require) a jury to find that the transaction was a "gift." It is noteworthy that in *Kaiser* the recipient of the strike benefits was *not* a member of the Union for much of the time that he received benefits. I hardly see how the *Kaiser*

court could have avoided affirmation of the jury's finding of a "gift" under the circumstances before it.

Even if I believed, as does the majority, that *Kaiser* is apposite to the facts at hand, I would not find the benefits paid to Mr. Stone to be a "gift" in this case. With the single exception of *Kaiser*, every case (including each jury case) to have considered the matter that I am aware of has found strike benefits *not* to be gifts from the Union to the recipient. *See, e.g., Woody v. United States*, 368 F. 2d 668 (CA 9, 1966); *Halsor v. Lethert*, 240 F. Supp. 738 (D.C. Minn. 1965); *Placko v. Commissioner*, 74 T.C. 452 (1980); *Colwell v. Commissioner*, 64 T.C. 584 (1975); *Brown v. Commissioner*, 47 T.C. 391 (1967); *Hagar v. Commissioner*, 43 T.C. 468 (1965); *see also Jernigan v. Commissioner*, T.C. Memo. 1968-18 (1968) and *Phillips v. Commissioner*, T.C. Memo. 1965-268 (1965).

A holding that the benefits here were income and therefore taxable in addition to being the correct legal result, would do equity. Those fellow employees of Mr. Stone who did not participate in the strike, including those who were Union members, continued to pay state income tax on their earnings. Mr. Stone's right to join in the strike is an important right but the mere fact that an individual chooses to join in a strike should not provide him with a tax shelter.

Chief Justice BRANCH joins in this dissent.