J. Truman **WARD** and Mary M. Ward, Plaintiffs-Appellants,

v.

**UNITED STATES of America,** Defendant-Appellee.

No. 71–1242.

United States Court of Appeals, Sixth Circuit.

Feb. 22, 1972.

Richard D. Speight, Nashville, Tenn., for plaintiffs-appellants; William F. Carpenter, Goodpasture, Carpenter, Woods & Sasser, Nashville, Tenn., on brief.

Richard Farber, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, William Massar, Gordon S. Gilman, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; Charles H. Anderson, U. S. Atty., Nashville, Tenn., of counsel.

Before EDWARDS, BROOKS,* and KENT, Circuit Judges.

EDWARDS, Circuit Judge.

This is a suit for recovery of income taxes paid under protest. Appellant, J. Truman Ward,[1] sold radio station WLAC to the Life and Casualty Company in 1952 by a written contract which called for a $1,250,000 consideration to be paid to him, plus $30,000 a year in payment for at least 17 years for advisory services and for holding himself available for such advisory services. Appellant paid taxes on these payments as personal income for a number of years. In 1963–65 the Internal Revenue Service found no advisory services were rendered by appellant and refused to allow WLAC to expense the yearly payments of $30,000 in the corporate income tax returns. Thereupon Ward claimed these payments as capital gain on the sale of the radio station in his income tax return. On IRS' disallowance of capital gain treatment, appellant paid the taxes assessed and sued to recover them.

The case was heard before the United States District Court for the Middle District of Tennessee, Nashville Division. In his unpublished Memorandum Opinion, the District Judge made a careful analysis of the background, the negotiations for, and prior drafts of the WLAC purchase contract. As to the na-

---

* Honorable Henry L. Brooks died on December 30, 1971.

1. Mary M. Ward is a party only because as his wife she signed a joint tax return with J. Truman Ward.

ture of the $30,000 payment feature he found:

"The taxpayer, the plaintiff, admits that one of the items about which he and Life & Casualty Insurance Company bargained was the character of the $30,000 per year payment under the Radio Contract. He admits that Life & Casualty desired that the contracts be so worded and that the agreement be such that the amounts could be deducted as an ordinary business expense for compensation paid. This was not satisfactory to the taxpayer, but in the words of the taxpayer:

'So I finally stated, "All right, gentlemen, I will go along with you until such time as the Internal Revenue Department objects to the treatment of it, or the Commissioner of Insurance of any state in which we operate objects to it, both from the standpoint of the length of the contract and for their treatment that it was a salary." ' "

His opinion concludes with these findings of fact:

"Basically, in looking to the entire transaction, its history, the evolvement of the various steps, the language of the documents, the subsequent actions of the parties and the testimony of the witnesses, including the reasonableness of their testimony, the Court finds:

(1) The parties bargained for the availability of advisory services;

(2) Plaintiff bound himself to furnish same;

(3) Plaintiff was informed, after legal and accounting advice, that he was so binding himself;

(4) Plaintiff knew the tax consequences of his contract; and

(5) The fact that his advice was seldom, if ever, required is not pertinent since his availability was the essential element.

The findings above clearly reflect, and it is the opinion of this Court,

that the substance of the contract was that plaintiff agreed to render advisory services and the annual payment was not, in reality, the purchase price of the Radio Station WLAC. (Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.)"

Appellant contends that the contract by which WLAC undertook to pay him $30,000 a year for 17 years was simply part of the consideration for the contract by which the Life and Casualty Company acquired WLAC. The circumstances and the contract language leave no doubt that the $30,000 contract was coincidental with and related to the radio station purchase.

We are satisfied, however, that both the contract and the events preceding its signing provide strong support for the District Judge's findings pertaining to appellant's contract to supply advisory services on demand. Appellant had been the actual operator of this highly successful radio station from 1935 to 1952. WLAC's first proposal contemplated his continuing as President of WLAC and as a member of the Board. While the idea of his continuing as President was dropped, the contract did provide:

"(2) Ward agrees to serve in an advisory capacity to Life & Casualty, its successors, or any wholly owned subsidiary of Life & Casualty, so long as they shall require such service in the operation of WLAC Broadcasting Station, its successors and assigns, subject to the terms of this contract."

Appellant did continue to serve on the WLAC Board of Directors. The President of WLAC (under the new management) testified at trial to the truth of the following statement:

"Since the purchase of the station, Ward has at all times rendered service to the station (to Life & Casualty prior to December 31, 1953, and to WLAC, Inc. subsequent to December 31, 1953) on an active basis as provided for in the Radio Contract. On a day-to-day basis, he has served in an

advisory capacity in all phases of the operation and management of the station. From time to time, with one or more officials of the station, he has conferred with attorneys for the station, both in Nashville and in Washington, with officials of the FCC in Washington, and with officials of CBS in New York on various matters of management and operation. He has acted at all times in an advisory capacity, without attempting to make, or authority to make, management decisions. The character of his advisory services go into all phases of management and operation of the station, including programming and sales."

While there certainly are facts from which logical inferences favorable to the taxpayer's position can be drawn, there is also substantial countervailing evidence. On this record we cannot say that the District Judge's findings of fact are clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

Appellant also points out that in the event of appellant's death before 17 years elapsed, the contract provided for the balance of the payments to be made to his estate. While this is true, we do not believe that as a matter of law this fact is necessarily inconsistent with a contract for personal services of an executive and advisory type. Such services could well be valuable enough for the company to agree to this provision as a matter of sound business judgment.

Appellant also relies upon Brush-Moore Newspapers, Inc. v. Commissioner of Internal Revenue, 95 F.2d 900 (6th Cir.), cert. denied, 305 U.S. 615, 59 S.Ct. 74, 83 L.Ed. 392 (1938). The decisive

conclusions of our court in that case (as well as in this one) were that 1) an agreement of the parties was in evidence which characterized the transaction as the court found it to be, and 2) that over and above that interpretation by the parties, there was substantial evidence to support the findings of the trial court.

Finally, appellant expresses repeated indignation that the government should take an inconsistent position concerning the treatment of the $30,000 sums when paid by WLAC, as compared with its position in regard to receipt of the same sum by appellant.

Clearly, however, the government is not estopped from urging its present position in this case, which is the first of the two tax cases to come to trial.[2]

The judgment of the District Court is affirmed.

2. In the interest of seeing that the government position be fairly and accurately recorded, we note that its brief in this case states:
  "The District Court's ultimate findings are supported not only by the express provision of the Employment Contract that taxpayer 'agrees to serve in an advisory capacity to Life and Casualty, its successors, or any wholly owned subsidiary of Life and Cas-

ualty, so long as they shall require such service', but also by evidence which makes clear that the insurance company was and should have been anxious to be able to call on him for advice. The insurance company's president testified that taxpayer had been very successful in operating the radio station and had a very high reputation in the radio field."