ESTATE OF J. SHIRLEY SWEENEY, Deceased, JANE A. SWEENEY, Independent Executrix, and JANE A. SWEENEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent ESTATE OF J. SHIRLEY SWEENEY, Deceased, JANE A. SWEENEY, Executrix, and JANE A. SWEENEY, Surviving Spouse, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sweeney v. Commissioner
Docket Nos. 8293-76; 276-78.
United States Tax Court
T.C. Memo 1979-387; 1979 Tax Ct. Memo LEXIS 141; 39 T.C.M. (CCH) 201; T.C.M. (RIA) 79387; September 19, 1979, Filed Donald J. Forman, for the petitioners. William P. Hardeman, for the respondent. SCOTT *142 MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax under section 6653(a), I.R.C. 1954, [1] for the years and in the amounts as follows: Deficiencies
Addition to Tax
in
I.R.C. 1954
Year
Income Tax
(Sec. 6653(a))
1972
$2,353.12
$117.69
1973
2,800.33
140.02
1974
3,078.84
153.94
1975
2,640.85
0
Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following: (1) Whether the amount of $6,000 paid to J. Shirley Sweeney in each of the years 1972, 1973, 1974 and 1975 by the Southwestern Diabetic Foundation, Inc. was a gift or was compensation includable in his taxable income. (2) Should taxable income as reported by petitioner for each of the years 1968, 1969, 1970 and 1971 be increased by $6,000, representing additional compensation for the purposes of determining petitioners' base period income for income averaging purposes. FINDINGS OF FACT Some of the facts have been *143 stipulated and are found accordingly. Petitioner Jane A. Sweeney resided in Dallas, Texas at the time she filed the petition in this case in her behalf and as executrix of the Estate of J. Shirley Sweeney, Deceased. J. Shirley Sweeney and Jane A. Sweeney during the years 1972 through 1975 were husband and wife. They filed a joint Federal income tax return for each of these years. J. Shirley Sweeney, Deceased (Dr. Sweeney) was a physician. He was born in 1896 and died on June 25, 1976, at the age of 80. On July 23, 1942, Dr. Sweeney entered active duty in the United States Medical Corps as a full Colonel. In 1945 he suffered a severe coronary occlusion and was retired from military service on October 10, 1945. Dr. Sweeney was outstanding in the field of treatment of diabetics. He was the author of articles on the subject of diabetes published in medical journals. Dr. Sweeney had lived during his childhood in Gainesville, Texas. Shortly after retiring from the military service, Dr. Sweeney and his family moved to Gainesville and Dr. Sweeney began the practice of medicine in Gainesville. On December 22, 1947, Dr. Sweeney organized the Sweeney Diabetic Foundation, Inc. *144 under the laws of Texas. The name of this foundation was changed on December 9, 1953, to the Southwestern Diabetic Foundation, Inc. On September 5 1951, in a letter addressed to the Sweeney Diabetic Foundation, Inc. respondent held that the foundation was exempt from Federal income tax under the provisions of section 101(6) of the Internal Revenue Code of 1939, now section 501(c)(3) of the 1954 Code. Southwestern Diabetic Foundation, Inc. (Foundation) was organized primarily to construct and operate a summer camp for diabetic children between the ages of 6 and 18. Dr. Sweeney was primarily responsible for raising the funds with which to construct the camp, known as Camp Sweeney, and was instrumental in its construction. The camp opened in the summer of 1950. When the camp was first opened, Dr. Sweeney took on most of the responsibility of recruiting and training the staff. A large part of the curriculum of the camp was classes for diabetic children to teach them how to care for their health problems, particularly proper diet, rest and giving themselves insulin shots. In the early years of the camp most of these classes were taught by Dr. Sweeney. Medical *145 students who were compensated for their services were also trained and utilized in the camp program. Dr. Sweeney was medical director of the camp from its inception until his retirement on August 2, 1975. In the early years of the camp other physicians assisted Dr. Sweeney in the operation only on an occasional basis and he spent a substantial portion of his time during the summer months at the camp directing its medical program. He also, throughout the early years of the camp, raised funds for the camp in the Dallas area through contacts with foundations and various interested individuals. He was also responsible for donations of medicine and supplies given to the camp by the pharmaceutical industry. From approximately 1950 through 1953, Dr. Sweeney would work on a daily basis at the camp. In the morning he would review the results of tests performed on the children by the medical students or the student doctors, go over their dietary plans, hold conferences with the parents and the children and with the medical students and the camp staff. He continued to teach most of the classes for the children. In the afternoon he would again confer with the student doctors, going over *146 the program for the children. In the evening, which was the most likely time for the children to suffer insulin shock, Dr. Sweeney was always available in case a child did suffer insulin shock. His medical duties at the camp during this period of time on most days of the summer would run from early morning until approximately 8 o'clock at night. In 1953 or 1954, Dr. Sweeney developed stomach ulcers and had surgery at the Mayo Clinic. Thereafter he spent less time at the camp, but continued to participate in the activities of the camp on a daily basis. Other doctors in the Gainesville area began to contribute free of charge some time to the camp and the camp always had medical students or recent medical graduates available who were paid for their services. Beginning about u958, Dr. Sweeney, though still participating in the camp program, spent less time in his work with the camp. After 1958, he also spent less time in his private practice of medicine although he remained in private practice and visited patients almost to the time of his death. He also continued to actively participate in the activities of Camp Sweeney until he retired as the medical director of the camp on August 2, 1975. *147 Up to mid-1964, Dr. Sweeney had received no monetary compensation of any kind for his work or in connection with his work at Camp Sweeney. In 1964, he was still in the active practice of medicine and in fact in 1974 was still driving to the hospital to see his patients. At a meeting of the board of directors of the Foundation on April 16, 1964, Dr. Sweeney, in giving his report as medical director of the camp, pointed out to the board that his medical practice had suffered through the years because of the time he devoted to Camp Sweeney and his activities as medical director of the camp. One of the directors, Mr. Leo Kuehn, after hearing this report was of the opinion that Dr. Sweeney was entitled in some way to be reimbursed for the time he had spent at the camp and for the practice he may have lost because of his activities connected with the camp. Mr. Kuehn made a motion that the Foundation "pay Dr. S. Sweeney $500.00 per semester for coming camp session for honorarium, as per medical director of camp." All members present at the meeting voted "yes" on this motion. At a meeting of the board of the Foundation on October 29,1964, a motion was made and carried to "continue to *148 pay Dr. J. S. Sweeney $500.00 per month as long as the balance of the Foundation was at least $15,000.00: If balance got below $15,000.00 payment would stop till balance was brought back up to $15,000." At a meeting of the board of the Foundation on November 26, 1974, the chairman reported that he "had received a call from Doctor J. Shirley Sweeney, who requested that his 'IN HONORARIUM' be passed on to his wife, in the event of his passing." No action was taken at this meeting on Dr. Sweeney's request. This matter was again discussed at a board meeting on April 7, 1975, but no action was taken on it. At a meeting of the board held on July 23, 1975, a letter from Dr. Sweeney requesting that his status be changed from "Founder-Medical Director" to "Retired Founder-Medical Director" of Camp Sweeney was considered and Dr. Sweeney's request for retirement was approved by the board. The minutes show the following quotation from this letter: This is to request that the Honorarium which I have been receiving be continued, and increased to $750.00 monthly. This has become a taxable item. Cordially, J. Shirley Sweeney, M.D. The request of Dr. Sweeney for an increase in the "Honorarium" *149 was rejected. The following appears in the minutes of a meeting of the board of directors on May 1, 1976: PROPOSAL #II: Doctor Sweeney asked if the Board would pay the SSTAX and WHTAX on his monthly check, which would allow him to receive the full amount of $500.00. Chairman Brown explained that if the Board voted to pay both parts of the SSTAX and the WHTAX on the $500.00 each month, the annual cost to the Foundation would amount to $7,099.20; and if Doctor Sweeney paid the taxes, the same as all other employees on the staff, the cost to the Foundation would be $6,351.00. Doctor Powell said the salary for Doctor Sweeney would be justified since he would remain on a consultant basis, A motion was made that Dr. Sweeney's proposal A motion was made that Dr. Seeney's proposal with respect to payment of social security tax and withholding tax by the Foundation be rejected and the motion was carried. The $500 monthly payment to Dr. Sweeney authorized by the board of directors of the Foundation in 1964 continued until Dr. Sweeney's death. On the records of the Foundation these payments were listed in an account designated in various years as "Gifts and Donations *150 'In Honorarium'," "Figts & Donations Dr. Sweeney 'In Honorarium'," Gifts and Donations" or "Gifts and Donations (Gratuity) 'In Honorarium' for 15 years service without pay." Beginning in 1964 these payments by the Foundation to Dr. Sweeney were reported to him on Treasury Form 1099-DIV and underneath the yearly payment appeared the word "gift." Dr. Sweeney was held in high esteem by members of the board of the Foundation because of the work he had done through the years for Camp Sweeney. Dr. and Mrs. Sweeney did not report the yearly $6,000 payments as income on their returns for any of the calendar years 1968 through 1975.
Respondent in his notices of deficiency increased petitioners' income as reported for each of the years here in issue by the $6,000 payment received by Dr. Sweeney from the Foundation with the explanation that the amount was taxable income under section 61 of the Internal Revenue Code. In his notice of deficiency to petitioner with respect to the year 1972, respondent computed petitioners' income tax for the year 1972 on the basis of income averaging and in making the computation increased petitioners' income as reported for each of the *151 years 1968, 1969, 1970 and 1971 by the amount of $6,000. This adjustment was explained as being "unreported salary each year." OPINION Section 61 is very comprehensive in its definition of income. This section provides that, except as otherwise provided by statute, gross income means all income from whatever source derived. This broad definition includes the payments received by Dr. Sweeney unless these payments are excluded from taxable income under another provision of the statute. The only statutory provision which petitioners claim causes payments to be excludable from Dr. Sweeney's income is section 102(a) which provides that gross income does not include the value of property acquired by gift. The issue here, therefore, is whether the $6,000 payments received by Dr. Sweeney each year from the Foundation were gifts. In Commissioner v. Duberstein,363 U.S. 278, 283, 285 (1960), the Court pointed out that "gift" as used in section 102 does not have the same meaning that the term has in common law and that a voluntary transfer of property to an individual without consideration which would be a common law gift is not necessarily a gift within the meaning *152 of section 102. The Court stated that the mere absence of a legal or moral obligation to make such a payment does not establish a gift but that if the payment proceeds primarily from "the constraining force of any moral or legal duty" it is not a gift. The Court held that where the payment was in return for services rendered, it was irrelevant that the donor derived no economic benefit from the payment. Finally, in pointing out what is a gift under the Internal Revenue laws, the Court stated that to qualify as such a gift, the payment must proceed from a detached and disinterested generosity, out of affection, respect, admiration, charity or like impulses and that the most critical consideration is the transferor's intentions. We do not doubt in the instant case that the members of the board of the Foundation considered the $500 monthly payments to Dr. Sweeney as an "in honorarium" to be a gift in recognition of the valuable services he had rendered to Camp Sweeney to the detriment of his medical practice and in recognition of the services he was continuing to render. The fact that Dr. Sweeney had brought out the loss to his personal medical practice because of the time devoted *153 to Camp Sweeney at the meeting at which the honorarium was approved is indicative of this intent. Also, statements in the minutes first approving the honorarium that the payment be "for honorarium, as per medical director of camp" indicates that the honorarium was for Dr. Sweeney's services. The fact that Dr. Sweeney requested that the "in honorarium" be continued to his wife indicates that Dr. Sweeney effectively viewed this as payment for services. Other minutes of the board indicate that the members of the board considered the "in honorarium" to Dr. Sweeney to be payment in small part for the 15 years of service he rendered to the Foundation without pay and the services he was continuing to render to the Foundation. The various directors of the board were asked by a letter to check which of the following the $6,000 annual payments to Dr. Sweeney represented "1. Made with the intention that services rendered in past shall be requital more completely or 2. Made to show good will, esteem or kindness without thought to made requital for services." Each of them checked No. 2. However, from the balance of the record we conclude that the esteem and good will which the board members *154 had for Dr. Sweeney was due to the services he had rendered and was continuing to render free of charge to Camp Sweeney. In their view the $6,000 a year was not full compensation for these services. The mere fact that the directors may have viewed the "in honorarium" as a gift does not cause that payment to be a gift. As we pointed out in Hubert v. Commissioner,20 T.C. 201 (1953), affd. 212 F.2d 516 (5th Cir. 1954), a case somewhat similar to this, the fact that a sum paid was inadequate reward for the value of the services rendered does not negate the intention that the payment be compensation. Likewise in Walker v. Commissioner,25 T.C. 832 (1956), we held that the fact that the payment was made without obligation and was denominated a gift is not controlling where the evidence shows that the reason for the payment was in recognition of past or present valuable services. In the instant case the one director of the Foundation who testified at the trial stated that the $6,000-a-year payments to Dr. Sweeney were in recognition of his services to the Foundation over many years and the continuing services he was rendering to the Foundation *155 and Camp Sweeney. The record is clear that the payments to Dr. Sweeney were for past and present services, although he made no specific charge to Camp Sweeney for his services. We conclude from the record as a whole that the $6,000 yearly payments are not gifts within the meaning of section 102 but are includable in Dr. Sweeney's taxable income. Petitioner argues that since the years 1968, 1969 and 1970 are closed and a redetermination of tax for those years is barred by the statute of limitations, the $6,000 cannot properly be included in Dr. Sweeney's income for the years 1968, 1969, 1970 and 1971 in computing his income for those years for the purposes of income averaging for the year 1972. In Unser v. Commissioner,59 T.C. 528 (1973), we held that in computing taxable income for a current year under the income averaging provisions of sections 1301 through 1305 a taxpayer is required to use the correct amount of taxable income in each base period year whether or not the correct income had been reported on his return for each base period year. We held that the correct income for each year must be determined even though assessment of a deficiency or allowance *156 of an overpayment for the base period years was barred by the statute of limitations. In the Unser case, we discussed the legislative history of sections 1301 through 1305. In reaching our conclusion we pointed out that section 1302(b)(2), in defining base period income for each base period year, uses the phrase "the taxable income for such year" and not the taxable income as reported or as previously determined for such year. In our view, it is clear that the proper income to be used for each base period is the correct taxable income for that year. We therefore conclude that respondent properly determined petitioners' base period income for the purposes of income averaging for the taxable year 1972 by including in the income received by Dr. Sweeney in each base period year the $6,000 he received from the Foundation. Because of other items placed in issue in this case and disposed of by agreement of the parties, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩