T.C. Memo. 2000-148


UNITED STATES TAX COURT


R. PAUL KROPP, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LORNA B. KROPP, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10186-98, 10187-98.      Filed April 25, 2000.


Maris Baltins and Tamara W. Murock, for petitioners.

Julie L. Payne, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  In these consolidated cases, respondent determined the following deficiencies in, additions to, and an accuracy-related penalty on petitioners' 1994 Federal income tax:

| Petitioner | Deficiency | Additions to Tax | | Accuracy-Related Penalty |
| | | Sec. 6651(a) | Sec. 6654 | Sec. 6652 |
| --- | --- | --- | --- | --- |
| R. Paul Kropp | $36,135 | $8,797.50 | $1,848.30 | -- |
| Lorna B. Kropp | 9,596 | -- | -- | $1,919 |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] we must decide: (1) Whether $81,000 withdrawn from a joint checking account (joint account) by one of the petitioners is considered taxable compensation for services rendered or a nontaxable gift, (2) whether petitioners are liable for self-employment tax on account of the $81,000 withdrawal, and (3) whether the additions to tax and accuracy-related penalty apply.

                    FINDINGS OF FACT

The stipulation of facts, the second stipulation of facts, and the attached exhibits are incorporated herein by reference. At the time R. Paul Kropp (hereinafter Paul) and Lorna B. Kropp

---

[1] The parties stipulate that during 1994, R. Paul Kropp (hereinafter Paul) received the following income: Capital gains of $1,369, dividends of $1,646, interest of $214, and rent of $12,000. The parties also stipulate that during 1994, Lorna B. Kropp (hereinafter Lorna), Paul's wife, earned wages of $12,549. Respondent argues that pursuant to applicable community property laws, Paul and Lorna must each report one-half of the couple's combined income. Petitioners do not contest respondent's position. We therefore find that petitioners concede this issue. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

(hereinafter Lorna) filed their petitions, they resided in Spokane, Washington.

In 1981, Paul, a graduate of Wesleyan University and Yale University, worked for the New England Nonprofit Housing Development Corp. In August 1981, Paul, along with Lorna and their children, moved to Spokane, Washington, to aid his father in developing several real estate properties and in handling his father's financial matters. Paul performed those services from 1981 until his father's death in 1983.[2] In 1984, Paul helped settle his father's estate. From 1981 to 1984, on account of the services performed for his father and the settling of his father's estate, Paul withdrew funds from a joint account bearing his name and the names of his father, his mother (Doris Kropp), and Lorna. Paul treated the withdrawn funds as income on his tax returns for those years. Paul and Lorna used the withdrawn funds for their household's living and medical expenses.

After the estate was settled, Doris Kropp owned several tracts of undeveloped land, two health/sports facilities, a condominium, and a brokerage account consisting mostly of municipal bonds. Paul and his sister, Karen Harte (Mrs. Harte), each received $600,000 from their father's estate.

Soon after the death of her husband, Doris Kropp encountered mental health problems and currently resides in a nursing home.

---

[2] Paul's father died in an automobile accident.

Despite her intensifying illness, in 1984, Doris Kropp organized a corporation to hold certain tracts of the undeveloped land and gave stock in that corporation (corporate stock) equally to Paul and Mrs. Harte and their immediate families.

In 1985 and 1986, Paul rendered some services to Doris Kropp with regard to her financial affairs. In 1986, Paul arranged the sale of one of the tracts of undeveloped land, but the buyer decided not to purchase the property. In 1991, Doris Kropp sold that remaining tract of undeveloped land. Paul was not involved in the sale of that property. Instead, Mrs. Harte's husband met with a real estate agent and the buyer for Doris Kropp. Around this time, Doris Kropp also sold one of the health/sports facilities to Paul and the other to Mrs. Harte. In 1994, Paul worked extensively, on a volunteer basis, with children. He managed two soccer teams and chaired the Spokane Junior Soccer Committee.

From 1985 to 1994, Paul continued to withdraw funds from the joint account, including $81,000 in 1994. Paul and Lorna continued to use the withdrawn funds for their household's living and medical expenses and in addition used the withdrawn funds for the education of their children at a private school. It is unclear from the record how Paul treated the withdrawn funds on his 1985 through 1993 tax returns or whether he filed tax returns at all for those years. Paul did not file a tax return for

1994.[3]

From 1981 to 1994, except for the gift of the corporate stock, Mrs. Harte received annual gifts from Doris Kropp not exceeding $1,000.

In the early 1980's, the Helena, Montana, office of the accounting firm of Galusha, Higgins & Galusha (Galusha) summarized Doris Kropp's business transactions (bookkeeping) and prepared her tax returns. Sometime after the death of Paul's father (post-1983), Thomas J. Shea (Mr. Shea) of Galusha's Bozeman, Montana, office (Galusha's Bozeman office) became responsible for Doris Kropp's bookkeeping and tax returns. Shortly after assuming the bookkeeping responsibilities, Galusha's Bozeman office transferred the bookkeeping responsibilities to another service provider (bookkeeping service provider). During the time Mr. Shea was responsible for Doris Kropp's bookkeeping, Mr. Shea had limited contact with Paul. They never discussed the tax treatment of any particular item. Thereafter, Mr. Shea did not have any further contact with Paul.

Mr. Shea had no personal knowledge of the services Paul may have performed for Doris Kropp. From information provided by the Helena, Montana, office of Galusha, Mr. Shea understood Paul's services to Doris Kropp to include managing her rental

---

[3] For 1994, Lorna filed a tax return designated "Married filing separate".

properties, land, and brokerage account.  Based upon that understanding and the issuance of Forms 1099-MISC, Miscellaneous Income, by the bookkeeping service provider, Mr. Shea deducted the withdrawn funds on Doris Kropp's tax returns, including her 1994 tax return.  Beginning with when Mr. Shea first prepared a tax return for Doris Kropp through the filing of her 1994 tax return, Mr. Shea has never been directed to treat the withdrawn funds differently.

In 1996, Mrs. Harte obtained a power of attorney from Doris Kropp.  By 1997, Mr. Shea referred only to Mrs. Harte and her husband with regard to Doris Kropp's financial affairs.

In separate notices of deficiency for 1994, respondent determined, among other items, that the $81,000 was nonemployee compensation and included the $81,000 in Paul's and Lorna's income.[4]

## OPINION

I.   Taxability of the $81,000 Withdrawal

Gross income encompasses "all income from whatever source derived, including * * * Compensation for services".  Sec. 61(a). The value of property acquired by gift, however, is not included in gross income.  See sec. 102(a).  In Commissioner v.

---

[4]  Respondent included the entire $81,000 in Paul's income. Respondent also included one-half of the $81,000 in Lorna's income.  Pursuant to applicable community property laws, Paul and Lorna must each report one-half of any amount established by the Court as nonemployee compensation.

Duberstein, 363 U.S. 278, 285 (1960), the Supreme Court stated that a gift arises out of a transfer resulting from a "'detached and disinterested generosity,' * * * 'out of affection, respect, admiration, charity or like impulses.'" (Citations omitted.) We perform a factual analysis in determining whether a transfer is to be considered a gift, looking primarily at the intent of the transferor. See id.

Petitioners contend that the $81,000 withdrawn from the joint account constituted a nontaxable gift. Respondent contends that the $81,000 constituted compensation for services rendered by Paul to Doris Kropp.

Doris Kropp did not testify at trial. In support of their argument, Paul and Lorna testified that during 1994, Paul did not render any services to Doris Kropp. Respondent presented two witnesses, Mr. Shea and Mrs. Harte, in support of his position.

Although it is without question that Paul performed services for his father and his father's estate from 1981 to 1984 and that he continued to perform some minor services for Doris Kropp in the years immediately following her husband's death, the record does not support respondent's contention that Paul continued to perform services for Doris Kropp as late as 1994, the taxable year at issue.

Mr. Shea did not have any personal knowledge of the services Paul may have performed for Doris Kropp in 1994. Mr. Shea

explained that relying on previous practice and the issuance of Forms 1099-MISC, Miscellaneous Income, to Paul by the bookkeeping service provider, he deducted the $81,000 on Doris Kropp's 1994 tax return. Mrs. Harte testified that she considered the $81,000 to be Paul's wages although she had no personal knowledge of any services actually performed by Paul in 1994.

As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe. See Christensen v. Commissioner, 786 F.2d 1382, 1383-1384 (9th Cir. 1986), affg. in part and remanding on another issue T.C. Memo. 1984-197; Nell v. Commissioner, T.C. Memo. 1986-246. At trial, we had the opportunity to evaluate Paul's and Lorna's veracity and to observe their demeanor. We found Paul and Lorna to be credible witnesses and accept their testimony that Paul did not perform any services for Doris Kropp in 1994. We believe that after her husband's death, Doris Kropp continued to provide for Paul and his immediate family out of love and affection for them. We therefore conclude that the $81,000 withdrawal was not on account of services rendered by Paul to Doris Kropp but was instead a gift. Accordingly, we hold that Paul and Lorna are not liable for the deficiencies (including self-employment taxes) determined by respondent with regard to the $81,000 withdrawal.

II.  <u>Additions to Tax and Accuracy-Related Penalty</u>

Because we have concluded that the $81,000 did not constitute taxable compensation and the parties have made various concessions, they will have to determine in their Rule 155 computations whether Paul or Lorna has an underpayment of tax so that the additions to tax pursuant to sections 6651(a)(1) and 6654 still apply to Paul and the accuracy-related penalty pursuant to section 6662 still applies to Lorna.

For purposes of the section 6651(a)(1) addition to tax calculation, Paul does not argue that the "reasonable cause and not due to willful neglect" exception applies, and we conclude that the exception does not apply in the instant case.  With regard to the section 6654 addition to tax, Paul argues on brief that the exception listed in section 6654(e)(1) applies.  The section 6654(e)(1) exception is computational, and we leave it for the parties to compute.

As for the section 6662 accuracy-related penalty, Lorna argues that she acted in good faith and that she did not engage in negligence or disregard of rules or regulations.  Because Lorna has failed to present any evidence with regard to the underpayment (if any) associated with the items of income conceded, we conclude that the section 6664(c)(1) exception (for reasonable cause and good faith) does not apply.

To the extent not herein discussed, we have considered the

parties' other arguments and found them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.